Smith *vs.* Brinckerhoff and others.

Where, after a creditor has filed his petition in bankruptcy, a debtor, with full
knowledge of the fact, purchases a claim against him, he can not set it off in
an action brought by the assignee in bankruptcy to recover the original indebt-
edness,

Motion by defendants to set aside report of a referee.    The
action was assumpsit by the plaintiff as assignee in bankruptcy
of Preston & Pomeroy, commenced in May, 1844, to recover a
balance of accounts, alledged to be due from the defendant to
Preston & Pomeroy.    The defendant pleaded the general issue,
and gave notice of set-off.    On the trial before the referee the
defendants offered as a set-off to the plaintiff's demand a note
of Preston & Pomeroy for $459,44, which matured in Jan. 1843.
This note was purchased by the defendants, at a discount, on
the 15th of February, 1843, after the commencement of the
proceedings in bankruptcy by Pomeroy, and after the firm be-
came insolvent.    The petition of Pomeroy was filed on the 23d
·of January, 1843, and the petition of Preston was filed on the
27th of February, 1843.    The referee disallowed the note as
an offset, and reported that there was due to the plaintiff $487,54.

*E. Seely,* for the plaintiff.

*E. Sandford,* for the defendants.

*By the Court,* Edwards, J.    At the time that Pomeroy filed
his petition in bankruptcy, the defendants had no set-off to the
claim of the partnership firm of Preston & Pomeroy.    This
claim formed a part of the assets which were set out by Pome-
roy in the schedule annexed to his petition, and which were to
be applied *pro rata* for the payment of creditors.    After this pe-
tition had been filed, and with a full knowledge of the insolvency
of Preston & Pomeroy, the defendants purchased a note of the
firm, which they now propose to offset against their indebtedness,

Smith *v.* Brinckerhoff.

If we should adopt the rule which was laid down by Justice Story in *Ex parte Foster*, (5 *Law Rep.* 55,) that when the decree in bankruptcy is passed, it relates back, for all the purposes of the act, to the time of the petition, the claim which is set up by the defendants would be clearly untenable. But this rule, although often reiterated by him in other cases, does not seem to have been universally adopted, at least to its full extent. Thus in the case of *Miller* v. *Black*, (1 *Barr's Penn. Rep.* 420,) where an execution was levied upon the property of a bankrupt after the filing of his petition, and before a decree, upon a judgment entered up before the petition, it was held that the right of the judgment creditor was prior and superior to that of the assignee in bankruptcy. And in the case of *Berthelon* v. *Betts*, (4 *Hill*, 577,) where proceedings had been commenced against a judgment debtor under the non-imprisonment act of this state before the filing of the petition in bankruptcy, and where after the petition, but before a decree, the officer who issued the warrant had made an order that the debtor assign his property, it was held that such assignment was valid; and the court said that a transfer of the debtor's property *in invitum*, made to satisfy his debt, and made *bona fide* prior to a decree in bankruptcy, should not be overreached by that decree. It will be observed, however, that in both of these cases, as well as in the other cases cited on the argument, the proceedings were coercive; that they were founded upon a judgment existing before the petition; and that the property of the bankrupt had actually been taken from him before a decree in bankruptcy.

But in this case the circumstances are very different. The defendants here had no claim against Preston & Pomeroy at the time of the filing of the petition by Pomeroy, and they adopted no coercive measures afterwards. Instead of having a claim, they owed a debt, to which there was no offset—a debt in which all the creditors of Preston & Pomeroy had acquired an interest immediately upon the commencement of proceedings in bankruptcy—a debt which the parties proceeding in bankruptcy had no right to release; and the defendants now propose to deprive the creditors of the benefit of this debt, by

offsetting a note which was purchased when it was past due, for less than its face, and while proceedings in bankruptcy were pending. If the defendant had known of the filing of the petition, than can be no doubt that a transaction like this would be a direct fraud upon the law, and it seems to me that such a transaction is so entirely in contravention of the policy and object of the law that it should be held to be equally a fraud upon it without actual notice. If the persons who were the owners of the note at the time of the filing of the petition, had continued to be so till the decree, they would have been entitled only to a ratable proportion of the bankrupt's assets; and it would seem to be a mockery of the law that another person could, by what was termed by Lord Kenyon in a similar case, "an intrigue" between himself and the owners of the note, obtain payment of the note in full; for such would be the legal effect of the transaction, if the claim set up by the defendants should be sustained. In the case of *Dickson* v. *Evans*, (6 *Term R.* 53,) where a like attempt was made, the court refused to sanction it; and a similar decision was made in this state in the case of *Ogden* v. *Cowley*, (2 *John.* 274.) In these cases, however, the court lay stress upon the particular phraseology of the bankrupt acts upon which they were respectively founded. The words used in the 5th Geo. 2, ch. 20, p. 28, and also in the act of congress of 1800, p. 42, are, that an offset shall be allowed where there have been mutual debts between the bankrupt and any other person at any time before the bankruptcy. In the bankrupt act of the United States, passed in the year 1841, the provision is that "in all cases where there are mutual debts, or mutual credits, between the parties, the balance only shall be deemed the true debt or claim between them, and the residue shall be deemed adjusted by the set-off." It does not state the time when the mutual credits must exist; but it would hardly be a reasonable construction to say they might be created after the filing of the bankrupt's petition and at a time when he was incapacitated from entering into engagements binding upon his property.

It is said, however, that in this case the note which the defendants claim to offset, was purchased before Preston filed his

Pearce *v.* Colden.

petition in bankruptcy. But that can make no difference. It is admitted that the partnership was insolvent at the time that Pomeroy filed his petition; and such being the case, even if Preston had never filed his petition, the court would have assumed jurisdiction over all the parties to the partnership, and over all their property, both joint and several. Such seems to have been uniformly held to be the law. (*Fisher* v. *Currier,* 5 *Law Rep.* 217. *Ex parte Hall, Id.* 267. *Ayer* v. *Barstow, Id.* 478.)

We think that the referee was correct in his conclusion that the defendants had no greater rights than their assignor, that is, a right to a ratable proportion of the assets of the bankrupt, on proof of their debt in the manner prescribed by the statute.

The motion to set aside the report of the referee must be denied with costs.

---

Same Term. *Before the same Justices.*

Pearce and others *vs.* Colden and others.

Where, simultaneously with the execution of a lease for a term of years, an agreement is made, whereby the landlord stipulates that at the end of the term he will renew the lease or pay for the buildings erected by the tenant, and at the end of the term he tenders a renewal, which the tenant refuses to accept, the landlord is entitled to recover possession without paying for the buildings.

Where a lot has on it a house occupied by several tenants who rent different apartments, they are joint occupants of the land, and may be proceeded against jointly in an action of ejectment.

Error to the superior court of the city of New-York. The action was ejectment, to recover the possession of a house and lot fronting on the Bowery in said city. The suit was commenced in the name of Jane Ann Ferrers, as plaintiff; but she dying, it was revived in the name of Colden and Ogden, her executors. The premises in question originally belonged to