Holmes *v.* Davis.

---

NATHAN C. HOLMES, adm'r &c. of Isaac T. Holmes, deceased, *vs.* HORATIO DAVIS.

The expression " the general provisions of the revised statutes relating to actions concerning real property," in § 455 of the code, refers to all the provisions of a general character in chapter 5 of part 3d of those statutes, excepting where the code has otherwise provided ; and makes those provisions applicable to actions brought under the code.

But it does not follow that the proceeding to recover mesne profits, after a recovery in ejectment, must necessarily be in the form of a suggestion, according to the revised statutes. The application of their provisions is to *actions* brought in pursuance of the code.

If a claim for mesne profits exists, an action will lie to enforce it; which action must be by summons and complaint, adapted to the nature of the injury.

The complaint must be a plain and concise statement of the facts constituting the cause of action, and contain a demand of the relief to which the plaintiff supposes himself entitled.

Where the plaintiff, being lawfully in possession of certain grist and saw-mills and the premises attached thereto, under and by virtue of a lease thereof to his intestate, from the defendant, by which the lessee was to have one-half of all the earnings of the saw-mill, and one-third of the proceeds, earnings and tolls of the grist mill, was forcibly and unlawfully expelled and evicted from the grist mill by the defendant, who entered into and continued in possession thereof until after the expiration of the term mentioned in the lease ; and the plaintiff recovered the possession, in an action of ejectment; *Held,* that in an action for mesne profits, the plaintiff was entitled to recover one-third of all the proceeds, earnings and tolls of the grist mill, received by the defendant during

Holmes *v.* Davis.

his occupation thereof, without making any deduction for the expense or labor of running the mill.

*Held also,* that the defendant had no right to oust the plaintiff from his lawful possession, and then charge him with his services, and moneys expended, which were rendered and paid without the plaintiff's request or consent, and against his will.

*Held further,* that it was proper to instruct the jury to estimate the proceeds, earnings and tolls of the grist mill from the evidence before them, showing the value of the use and occupation of the mill at the season of the year while it was in the possession of the defendant, and to allow to the plaintiff, in making up their verdict, one-third of that amount.

MOTION on behalf of the plaintiff for a new trial, on a bill of exceptions. The complaint stated that on the 28th day of December, 1846, in the lifetime of said Isaac T. Holmes, the intestate, the defendant demised and leased unto said Isaac T. Holmes, deceased, by a written lease under the hands and seals of the intestate and the defendant, certain premises in the town of Parma in the county of Monroe, being the grist and saw-mills and the premises thereunto belonging, houses and buildings thereunto attached, known and called the Bush mills, situate on Salmon creek, west of Parma Centre &c., for and during the term of three years four months and three days from the time aforesaid, which term would end on the 30th day of April, 1850, reserving the house and barn and half an acre of land, being a portion of said premises, until the 1st day of September next after the date of the said lease. The complaint set forth *in hæc verba* the agreement called a lease, by which it appeared among other things that the intestate covenanted to run said mills at all times when they could conveniently be run, and there was timber to be sawed and grain to be ground ; and that he would pay all repairs that did not exceed $5 at one time, and make all small repairs as they were needed, and that he would pay and deliver to the party of the first part, (the defendant,) one-half of all the earnings of the said saw-mill, and two-thirds of all the proceeds, earnings and tolls of the said grist mill, to be delivered on the premises. The party of the first part was immediately to make certain repairs specified, and cause the dam to be repaired, and during the term to pay the expense of

all repairs that should exceed the cost of $5 at any one time; and to have the privilege to stop the grist mill from the 1st day of June to the 1st day of September then next for the purpose of repairing the mill-race; and he reserved the use of the saw-mill to saw what timber he might want to repair the dam and race. The party of the first part to pay all money taxes, and the party of the second part (the intestate) all road taxes during said term. And it was provided that if the party of the second part should fail to perform all covenants on his part, it should be lawful for the party of the first part to re-enter and take possession of the premises or resort to any other legal remedy; and the party of the second part covenanted to deliver the premises to the party of the first part at the expiration of the said term. There were other provisions in the lease, not necessary to be mentioned. The complaint further stated that the said Isaac T. Holmes, deceased, took possession of the premises described in the lease and occupied the same under the provisions thereof until on or about the 16th day of November, 1848, and until his death on or about the last mentioned day. That he the said Isaac T. Holmes died at the town of Parma, in possession of the premises, intestate, leaving the plaintiff his father, and his sole heir at law. That during the last sickness of the intestate and for the space of about six weeks before his death, the plaintiff, at the request of the intestate, carried on said premises and occupied the same for him, and from his death up to and including the 16th day of January, 1849, carried on and occupied the premises, yielding and paying to the defendant as required by him and as stipulated in the lease, the rent and use of the said premises; at which time the defendant, with force and violence, and contrary to the wishes and intention of the plaintiff, entered upon and into and took possession of the said premises, including the grist mill and saw-mill, excepting the house and barn and a portion of the land connected with the house on said premises, and expelled the plaintiff therefrom and wholly excluded him from the use and occupancy and the rents and profits of the grist mill from said 16th day of January, 1849, up to and including the 30th day of April, 1850. That the plaintiff

was duly appointed by the surrogate of Monroe county administrator of the goods, chattels and credits of said Isaac T. Holmes, deceased, on the 5th day of February, 1849. The complaint alleged that the rents and profits of the said grist mill from the 16th day of January, 1849, to the 30th day of April, 1850, were worth $1000. That on the 25th day of March, 1850, the plaintiff, as such administrator, having recovered a judgment in this court against the defendant, in an action to recover the possession of said grist mill and premises, had on that day the roll of said judgment duly filed and docketed in the clerk's office of the county of Monroe, by which said judgment the defendant was adjudged to be wrongfully in possession of the said grist mill, and ordered and adjudged to surrender the possession of the same to the plaintiff as administrator of &c., as aforesaid. The plaintiff, as such administrator, claimed to recover of the defendant damages to the amount of $1000, for the wrongful withholding the possession of the said grist mill from the 16th day of January, 1849, to the 30th day of April, 1850, with the costs of this action, and also the costs of the said action to recover possession of the grist mill.

The answer of the defendant, 1. Denied the execution of the instrument of Dec. 28, 1846 set forth in the complaint; 2. Denied that he entered upon and took possession of any of the premises on or about the 16th day of January, 1849, or expelled the plaintiff therefrom, except the grist mill. He also denied that the use and profits of said grist mill from January 16, 1849, to April 30, 1850, were worth $1000, or any other sum, or that the plaintiff, as such administrator of &c. as aforesaid, was entitled to the use, rents and profits, or any part thereof. 3. Denied that the plaintiff, as such administrator, had sustained any damage, by reason of the defendant's withholding the possession of the said grist mill from the 16th January, 1849, to April 30, 1850. 4. Stated that the expenses of running the grist mill, for labor and small repairs that did not exceed $5 at any one time, and the labor necessary to work out the road taxes assessed on the grist mill during the period from January 16, 1849, to April 30, 1850, were more in value, than the value of the inter-

Holmes *v.* Davis.

est of the plaintiff as aforesaid in the rents and profits of the grist mill during said period. The he, the defendant, paid, laid out and expended during said period and for the purpose last aforesaid, $1000, which he would claim to recoup or set off against any claim of the plaintiff for rents &c., which might be proved on the trial. 5. That there was due to the defendant, on the 16th day of January, 1849, from the plaintiff as such administrator, $150 for his share or two-thirds of the proceeds, earnings and tolls of the grist mill, which the defendant would also claim to recoup or set off as aforesaid. 6. That the plaintiff's costs of the action to recover possession, mentioned in the complaint, had been paid, &c. A reply was put in by the plaintiff, the contents of which it is unnecessary to state.

The action was brought to trial on the issues formed by the pleadings, at a circuit court held in the county of Monroe, at the court house in Rochester, on the 21st day of October, 1853. It was proved that the plaintiff was appointed adminstrator, &c., on the 5th of February, 1849. The plaintiff, to maintain the issues on his part, called as a witness, Amasa A. Holmes, who testified as follows: "I am a son of the plaintiff. Isaac T. Holmes, the intestate, was my brother, and died in November, 1848, in a house on the premises rented to him by Davis, which premises are described in the complaint. At that time my father, the plaintiff, was living on the premises, and H. my brother, with him. I worked in the mill, as miller. I think I worked in it in the fall of 1848, about the time my brother was taken sick. I continued to work in it till Mr. Davis, the defendant, took the possession of the mill, which was about the 16th of January, 1849. This was the grist mill. The business of the mill was custom work, and some flouring. There were three run of stone. On the morning of the 16th of January, 1849, during my absence and the plaintiff's absence, the defendant entered into and took possession of the mill, and continued to occupy it, by himself or tenants, until the close of 1850." The plaintiff here offered to prove by this witness, that the mill was valuable for use and occupation, and that the gross earnings, in seasons when there was plenty of water, would

amount to $1800 or $2000 per year. The defendant, by his counsel, objected to such testimony as immaterial and improper, on the ground that this action was not a proceeding for mesne profits authorized by law; that the complaint was substantially for a trespass, and contained no allegation that the defendant had ever received or enjoyed the rents and profits of the mill, nor did any suggestion appear on the record of judgment in the ejectment suit mentioned in the complaint. But the court ruled and decided, that such evidence was proper; to which decision the counsel for the defendant excepted; and the witness then proceeded and gave evidence, subject to such exception, tending to show the facts so offered to be proved. On the cross-examination of this witness, the defendant offered to show, that when the defendant entered upon the premises, on the 16th of January, 1849, as testified to by the witness, he so entered by the consent and permission of the plaintiff; to which the plaintiff's counsel objected, and the court sustained such objection; to which the counsel for the defendant excepted. The defendant further offered and proposed to prove by this witness, that the ordinary expense for the labor in running said mill amounted, every year, to the sum of $700; to which the plaintiff's counsel objected, and the court sustained the objection, and decided such evidence to be incompetent; to which the counsel for the defendant excepted. Ira Randall and Seth M. Woodruff were called and sworn on behalf of the plaintiff, and gave evidence tending to show that, in ordinary seasons, the gross earnings, proceeds and tolls of said grist mill, would amount to from $1200 to $1500 per year.

On cross-examination of these witnesses, the defendant offered to prove by them that the ordinary expenses for the labor of running and taking care of said mill exceeded, at all times, the one-third of all the proceeds, earnings and tolls of said mill; to which testimony the counsel for the plaintiff objected, as improper, on the ground that the defendant was a trespasser, in taking possession of the grist mill, and that the plaintiff was therefore entitled to a verdict for one-third of the gross earnings of the mill, without any deduction for the labor of run-

ning said mill; and the court sustained the objection; to which the counsel for the defendant excepted. The judgment record in the action of ejectment, mentioned in the complaint, was read by the plaintiff in evidence, but no suggestion for damages, or mesne profits, was indorsed thereon or attached thereto. The lease described and set forth in the complaint was also proved and read in evidence by the plaintiff. The plaintiff thereupon rested. The defendant moved for a nonsuit, and stated the following grounds : 1st. No right of possession to the premises in question was proved to be in the plaintiff, until the 5th of February, 1849. No trespass had been shown, or demand for the possession of the premises. 2d. That this was an action for trespass, and not for mesne profits, and no suggestion for damages or mesne profits was indorsed on or attached to the judgment record in the action of ejectment mentioned in the complaint. 3d. That the plaintiff had not proved the receipt of any rents or profits from said grist mill, between the 16th of January, 1849, and 30th of April, 1850 ; and there was no allegation in the complaint, of the receipt of any rents or profits during that time, by the defendant. But the court overruled the said motion for a nonsuit; to which the counsel for the defendant excepted. The defendant then proved, that between the 27th of March, 1849, and the 2d of May, 1850, the gross proceeds, earnings and toll of said grist mill amounted only to the sum of $884, and a quantity of mill feed, sufficient to fat a number of hogs, which were then made to sell for $150. And the defendant rested. It was mutually agreed that no claim was made on account of any portion of the premises mentioned in the lease, except the said grist mill. The foregoing was substantially all the testimony in the action bearing on the exceptions herein presented.

The court charged the jury that the plaintiff was entitled to recover, in this action, one-third of all the proceeds, earnings and tolls of said mill, received by the defendant between the 16th of January, 1849, and the 30th of April, 1850, without making any deduction whatever for the expense or labor of running said mill during that time. To which charge the

counsel for the defendant excepted. The court further charged the jury, that they should estimate the amount of proceeds, earnings and tolls of said mill, from the 16th of January to the 27th of March, 1849, from the evidence before them, showing the value of the use and occupation of the mill at that season of the year, and allow to the plaintiff, in making up their verdict, one-third of that amount. To which charge the counsel for the defendant excepted. The defendant's counsel requested the court to instruct the jury, that the plaintiff was only entitled to recover nominal damages in this action, under the proof above stated; which the court refused to do; to which refusal the defendant also excepted. The jury then retired to deliberate upon their verdict. After they had so retired, the counsel for the plaintiff moved to amend the complaint, so as to make the action in form a proceeding for mesne profits, according to the form of the statutes in such case made and provided. To which the defendant, by his counsel, excepted. The court decided that the application for such amendment should be made at the same time with a motion for a new trial on the above exceptions. The jury rendered their verdict, by which they found for the plaintiff $418.

*J. H. Martindale,* for the defendant.

*H. R. Selden,* for the plaintiff.

*By the Court,* WELLES, J. After much examination and reflection, I am inclined to think that the expression, "the general provisions of the revised statues relating to actions concerning real property," in § 455 of the code, refers to all the provisions of a general character in chap. 5 of part 3d of those statutes, excepting where the code has otherwise provided. There may be, I think there are, difficulties in the way of this construction; but none so great as those to be encountered in the attempt to restrict the application of the expression to title 7 of the same chapter of the revised statutes. If we interpret the section of the code referred to, as applying to that

Holmes v. Davis.

title of the revised statutes only, there will be found no authority for a party to demand a new trial after a judgment rendered upon a verdict in an action to recover the possession of real property, where the judgment has been regular, and no error has been committed; but such judgment will be forever conclusive upon the parties and privies. But it has been uniformly held that § 37 of title 1 of chapter 5 of the revised statutes, which allows of two new trials in the action of eject- ment, without showing irregularity or error, applies to actions to recover possession of real property under the code. Indeed it never could have been the intention of the lawmakers to have a party concluded upon his title by one verdict in such an action. In other respects there can be no doubt, I think, that the provisions of chapter 5 of the revised statutes referred to, other than those of title 7 of that chapter, were intended to be preserved. It will be found exceedingly difficult to get along with the action to recover possession of real property without them.

But it does not follow that the proceeding to recover the mesne profits must necessarily be in the form of a suggestion according to the revised statutes. The application of their pro- visions is to *actions* brought in pursuance of the code. (*Lang* v. *Ropke*, 1 *Duer*, 701.) The forms of action existing at the time the code went into effect are abolished, and all rights of action then existing are authorized to be prosecuted in the manner therein provided. (§§ 69, 468.) Now if the right to mesne profits is a right of action, it must be enforced by action, and not otherwise. No one will deny, I apprehend, that a party is entitled to a remedy for a claim to mesne profits, unlawfully withheld from him ; and if so entitled, that remedy must be by action or special proceeding. (§§ 1, 2 *of the code.*) The rem- edy would be an ordinary proceeding in a court of justice, for the enforcement of a right, and therefore an action. No one would think of calling it a special proceeding. It never was so regarded before the code. Under the revised statutes the claim was an appendage to the action of ejectment, and was to be re- covered by a sort of continuation of that action ; and by the

code, may be recovered at the same time and in the same action with the possession, or in a separate, independent action. (§ 167, *subd.* 5. *Livingston* v. *Tanner*, 12 *Barb.* 481.) If a claim for mesne profits exists, an action must lie to enforce it; which action must be by summons and complaint, adapted to the nature of the injury. It is a maxim of the law, that there can be no wrong without a remedy—and that remedy, as I have attempted to show, is by action ; the complaint in which, must be a plain and concise statement of the facts constituting the cause of action, and contain a demand of the relief to which the plaintiff supposes himself entitled. (§ 142.) In the present case the complaint does contain such statement and demand, and shows, as it seems to me, a good cause of action ; and unless some error has been committed at the trial the plaintiff is entitled to retain the verdict.

The principal objection, raised upon the argument, to the rulings at the circuit, aside from those already considered, related to the measure of damages adopted by the judge at the trial. The jury were instructed that the plaintiff was entitled to recover one-third of all the proceeds, earnings and tolls of the grist mill received by the defendant between the 16th January, 1849, and the 30th of April, 1850, without making any deduction for the expense or labor of running the mill, and that they should estimate such proceeds, earnings and tolls from the evidence before them, showing the value of the use and occupation of the mill at that season of the year, and allow to the plaintiff, in making up their verdict, one-third of that amount.

The complaint alleges a forcible and unlawful eviction and expulsion of the plaintiff from the grist mill, and an entry thereupon by the defendant, on the 16th day of January, 1849, and that he continued to hold possession thereof and to exclude the plaintiff therefrom until after the expiration of the term mentioned in the lease, which was until and including the 30th day of April, 1850. This allegation is not denied in the answer, and is therefore to be taken as true.

Under such a state of facts, the plaintiff was entitled to recover according to the direction at the circuit. The defendant

had no right to oust the plaintiff from his lawful possession, and then charge him with his services, and moneys expended, which were rendered and paid without his request or consent, and against his will. (*Costigan* v. *The Mohawk and Hudson R. R. Co.* 2 *Denio*, 609. *Baker* v. *Wheeler*, 8 *Wend.* 505. *Lempriere* v. *Pasley*, 2 *T. R.* 505, 508. *Brown* v. *Sax*, 7 *Cowen*, 95. *Silsbury* v. *McCoon*, 3 *Comst.* 381–385, per *Ruggles J. Puffendorf*, cited by *Hill* arguendo, 6 *Hill*, 428, *note.*) Without going through with a statement of these authorities, it seems to me that they fully sustain the principle of the rulings under consideration. One-third of the proceeds, earnings and tolls of the grist mill were secured by the written agreement to the lessee. And unless the defendant was entitled to a deduction for the expense and labor of running the mill, the rule of damages given by the judge to the jury was correct.

Upon the whole, I think, there was no error committed at the trial, of which the defendant has a right to complain, and that a new trial should be denied.

[MONROE GENERAL TERM, December 3, 1855. *Selden, Johnson* and *Welles,* Justices.]