## JOSEPH B. VANDERVOORT *v.* EDWARD S. GOULD.

*Real Estate—Possession of Husband under Wife, not adverse—Damages—Interest.*

Where the husband is in possession under the title of his wife, his possession can in no sense be considered as adverse to her, as to those claiming under her.

Under the Code, the Plaintiff seeking to recover possession of land may unite in the same complaint a claim to recover the land with a claim for damages for withholding the same.

Interest is properly allowable upon damages for the unlawful detention of real estate.

BOCKES, J.—This action was brought to recover the possession of real property, with damages for its unlawful detention. The Plaintiff succeeded on the trial, and the judgment in his favor was affirmed by the General Term of Supreme Court in the First District. Thereupon the Defendant appealed to this Court.

The premises in question were a house and lot known as No. 18 Clinton Place, in the city of New York. The Plaintiff made title through several mesne conveyances from the Trustees of the Sailors' Snug Harbor in said city. The line of conveyance was as follows:

In 1833 the Trustees of the Sailors' Snug Harbor demised the lot in controversy to C. V. S. Kane, for the term of twenty-one years from November 1, 1831, on certain rents, covenants, and conditions in the instrument of demise stated; which also contained a provision for its renewal on the expiration of the term. On the 15th March, 1836, Kane, the lessee, conveyed the premises, subject to the terms and conditions of the lease, to the Defendant, Edward S. Gould; and the latter, on the 15th of May, 1857, conveyed to George Gould. On the 10th April, 1840, George Gould mortgaged the lease and premises to Cornelius Du Bois, to secure the payment of Edward S. Gould's bond for $4,000 and interest; and on the 9th of July, 1842, George Gould conveyed all his right, title, and interest—being, according to the papers, the

equity of redemption—to said Du Bois; and on the same day Edward S. Gould also released and quit-claimed the lease to said Du Bois.

Thus Mr. Du Bois became vested with the title as lessee under the original lease.

On the 25th July, 1842, Mr. Du Bois granted and conveyed the lease and premises to his daughter, Mary Elizabeth Gould, the wife of the Defendant, Edward S. Gould, with habendum clause, as follows:

"To have and to hold the same, and the rents, issues, and profits of said premises, unto the said Mary Elizabeth Gould, for the term of her natural life, to her sole and only proper use and benefit and behoof, free from all interference of her said or any future husband, and without the power of disposition or anticipation, and after her death to her children and their representatives and assigns."

The original term of twenty-one years expired Nov. 1, 1852; and on that day the Trustees of the Sailors' Snug Harbor granted a renewed lease to said Mary E. Gould, for the further term of twenty-one years, in the usual form, reserving rent.

By an instrument bearing date Nov. 1, 1855, Mary E. Gould demised the premises to the Plaintiff for the term of five years, from that date, at an annual rent of $1,500, payable semi-annually. In January, 1856, the Plaintiff demanded possession of the premises from the Defendant, who then had the occupation, and, possession being refused him, this action was brought.

Various questions of law on the facts were raised during the trial, and also questions as to the admissibility of evidence, all which are hereafter to be considered.

Irrespective of any question arising from the fact that Mary E. Gould was the wife of the Defendant, Edward S. Gould, the right of the Plaintiff to the benefit of his term in the premises is beyond possible controversy. The title comes down from the Trustees of the Sailors' Snug Harbor in a clear and unbroken line, through the Defendant himself, to Mary E. Gould, who, by a valid instrument, demised the premises to the Plaintiff for the term of five

years. The Defendant offered no evidence of any other title whatever under which his possession could be justified.

The Plaintiff's right to the occupation of the premises, pursuant to such demise, on the conveyances put in evidence, stood, therefore, fully vindicated. Nor is it obvious how the fact that Mrs. Gould was the wife of the Defendant afforded to the latter a defence against the Plaintiff's claim.

Mrs. Gould, at the time of the demise to the Plaintiff, held the legal title under the renewed lease to her, bearing date Nov. 1, 1852.

Although a feme covert, she was entitled to take and hold the property under the Act of 1848, and its amendments, the same as if she had been a feme sole.

It was "her sole and separate property, as if she were a single female," which she held " to her sole and separate use," and which she could enjoy and dispose of, " with the rents, issues, and profits thereof, in the same manner and with the like effect as if she were unmarried " (4 R. S., Edmonds' Edition, 513–514). The husband acquired no right or property therein in virtue of his marital rights (Gage *v.* Dauchy, 34 N. Y. 293; White *v.* Wager, 25 N. Y. 328, 330, 331). And even if we construe the rights of Mrs. Gould as having been acquired under the conveyance from her father in 1842, seven years prior to the Act of 1848–9, her husband, the Defendant, will gain no position available as a defence.

The grant was to her, for her separate use, and her husband was expressly excluded from taking any interest in the property conveyed. Equity would have protected her in its enjoyment as effectually as if the grant had been made to a trustee for her benefit.

In Darby *v.* Callahan (16 N. Y. 71–75), it is said that " prior to the passage of the act, a married woman could take as a gift, or by virtue of a bequest, or under a marriage settlement, and hold separate property, without the intervention of a trustee, and a Court of Equity would protect her in its enjoyment."

In equity a feme covert having a separate estate was always

to be regarded as a feme sole as to her right of enjoyment of it, and her disposition of it would be sanctioned by a Court of Equity, in the absence of all restraint on such right expressed in the instrument enacting the trust (Jacques v. Meth. E. Church, 17 John. 549).

In Dyett v. North A. Coal Co. (20 Wend. 570–573), Judge Cowen remarks, that when the estate of a married woman is completely distinct, and is held by her independent of her husband, she is to be regarded in equity, in respect to it, as a feme sole, except in so far as she may be expressly limited in her powers by the instrument under which she takes her interest.

This has long been the settled law of the land (Story's Eq. Jur., §§ 1380–1–2).

Now, in this case it is clear that Mrs. Gould, by the conveyance from her father, took a separate estate.

The instrument so declares.

It is therein expressly stated that the property and estate conveyed to her should be for her sole use, benefit, and behoof, free from all interference of her husband. He was, therefore, excluded from all participation in or control over it, and could claim nothing by virtue of the marital relation. And there being no trustee, the renewal of the lease to Mrs. Gould was a very proper act, as at most it but converted an equitable interest into a legal title, without impairing any right of her husband. It follows, therefore, that in any view which may be taken of the case, the Plaintiff's right to the possession of the premises was not affected by the fact that Mrs. Gould was the wife of the Defendant at the time of, and subsequent to, the period when her interest in the premises accrued.

This conclusion is also sustained by the reasoning of the Court and decisions in Westervelt v. Gregg (12 N. Y. 202–211), and in Sherman v. Elder (24 N. Y. 381–385). The third section of the Act of 1860 (Sess. Laws 1860, page 157, ch. 90), which required the assent of the husband to a conveyance by the wife of her separate property, has no application to the case in hand. The lease to the Plaintiff was not a sale and convey-

ance of the wife's real estate within the provision of that section.

The lease, too, was made years prior to the passage of this act, and the act was amended in 1862 (Sess. Laws 1862, page 343, ch. 172), and the provisions in regard to obtaining the husband's assent, in cases of sale and conveyance by the wife, were omitted and expurgated.

Nor did the clause in the conveyance to Mrs. Gould against anticipation restrain her from leasing the premises for a brief time on reasonable rent.

This was a very proper mode of enjoyment, in no way injuriously affecting her estate, or contravening the purposes of the grantor, as expressed in the clause referred to. It was plainly intended that she should have and enjoy the rents, issues, and profits of the premises, and the restraint was to the effect that she should not dispose of or anticipate the estate or its avails.

The lease to the Plaintiff for a short time, on a fair rent, payable in half-yearly payments, in no sense conflicted with this provision. But it was a provision with which the Defendant had no concern.

Considered as a trust, he was in no position to demand its performance.

He neither created it, nor was he interested in its observance.

It is next urged that the lease to the Plaintiff was void by reason of the Defendant's adverse possession.

There was, however, no proof of an adverse holding which could render the lease void. The Defendant made no claims under adverse or hostile title. On the contrary, he claimed to hold under Mrs. Gould's title, and insisted that his occupation was lawful, because, as husband, he was entitled to the possession of her estate. He was not, therefore, in possession under adverse or hostile title.

But it is urged that if his possession was not adverse, he must be considered as a tenant at sufferance, and was, therefore, entitled to notice to quit.

This suggestion is herein fully answered by the fact that the

objection was not taken on the trial—hence cannot be insisted on here.

In the course of the trial an instrument, in effect an agreement of separation between Mr. and Mrs. Gould, was offered in evidence, and received against the Defendant's objection. How this paper was material or relevant does not clearly appear.

Indeed, I think it was quite irrelevant and immaterial. But its admission in no way injuriously affected the Defendant's rights.

It was simply innoxious. It had no possible bearing on the question of damages for withholding the premises, which was the only question submitted to the jury.

Nor did it in any way affect the question of title decided by the Court.

The admission of the paper, therefore, being harmless in every possible view, constitutes no ground for reversing the judgment (20 N. Y. 246; 29 N. Y. 502, 503; 25 N. Y. 510; 1 N. Y. 519; 35 N. Y. 59, 60).

See the last case cited (The People v. Gonzaliz). It was remarked by Porter, J., "that the reception of illegal evidence is presumptively injurious to the party objecting to its admission; but where the presumption is repelled, and it clearly appears on examination of the whole record, beyond the possibility of rational doubt, that the result would have been the same if the objectionable proof had been rejected, the error furnishes no ground for reversal;" and it is further there said, that in this respect there is no distinction between civil and criminal cases.

These remarks are sound in principle, and are abundantly sustained by the authorities cited in their support.

The Defendant proved by the witness Roe, that Mrs. Gould left her home and went to France, with her two children, in July, 1855, and that she has since remained absent from this country.

On Plaintiff's motion this evidence was stricken out—and properly so—as irrelevant and immaterial.

Whether Mrs. Gould went abroad or remained in this country, and whether with or without her husband's consent or approval,

it in no way affected her title to the premises in controversy, or his (Plaintiff's) right to recover in the action. The evidence was immaterial, and was properly expunged.

At the close of the trial, the Defendant's counsel claimed and insisted that he was entitled to have the question submitted to the jury, whether the Plaintiff was the real party in interest in the action, and requested the Court to charge the jury that if the lease to the Plaintiff was only colorable, and intended merely to clothe him with an apparent right to the property, so that he could sue the Defendant and recover the possession or rent for her benefit, then the Plaintiff was not the real party in interest. The Court declined so to charge; but ruled and decided that no case was made on the evidence on which to found such claim and charge; and the evidence put in by the Defendant with a view to establish such claim was stricken out. In this the Court ruled correctly.

The position assumed and urged by the Defendant's counsel had no foundation in fact or law. The proof was clear and uncontroverted, to the effect that the lease from Mrs. Gould to the Plaintiff was valid, and binding on the parties to it.

It gave to the Plaintiff the right to occupy during the term, and bound him to pay Mrs. Gould the specified rent. Both were bound by a legal instrument, and their motives in entering into it were of no importance to the Defendant. With their purposes and intentions he had no concern. There was plainly no error in the ruling of the Court in this regard.

The Defendant's counsel requested the Court to hold and to charge the jury,—

First, that the Plaintiff was entitled to recover only nominal damages in the action. Secondly, that if the Plaintiff was entitled to recover more than nominal damages, he then could recover only such damages as he might have sustained prior to the commencement of the action; and, thirdly, that he was not entitled to recover interest on the annual value or the annual rent of the premises, or interest in any form or to any amount. The Court declined so to hold and charge.

On recurring to the complaint, it will be seen that the action was brought for the double purpose of recovering the premises, with damages for their unlawful detention.

At common law the remedy for such damages was by separate action of trespass for mesne profits. But under the Revised Statutes the mesne profits were recoverable upon a suggestion on the foot of the record of the judgment in ejectment (2 R. S. 310, §§ 43–44); and this judgment laid the foundation for subsequent proceedings to recover the mesne profits or damages.

Now, however, under the Code of Procedure, the Plaintiff may unite in the same complaint a claim to recover real property, with damages for the withholding thereof (Code, § 167; Livingston *v.* Tanner, 12 Barb. 481; Holmes *v.* Davis, 21 Barb. 265; same Case in Court of Appeals, 19 N. Y. 488; Tompkins *v.* White, 8 Barb. 520; The People *v.* The Mayor, 17 How. 57–64).

According to these authorities it is optional with the Plaintiff to unite the claims in one action, or have a separate action after the recovery in ejectment for the damages.

It is certainly clear that he may unite the two claims.

The Code is explicit to that effect (§ 167), and the change effected by this provision was commendable with a view to avoid a multiplicity of suits. The Court therefore ruled correctly in holding that the Plaintiff was not limited in his recovery to nominal damages only.

He was also entitled to recover for the unlawful withholding of the premises to the time of the trial.

The Defendant's possession was wrongful, and the claim for damages for this recovery was in the nature of a claim for a tort. The question was, how much was the Plaintiff damaged on the day of the trial by the Defendant's wrongful act, which was continuous to that period. And the same considerations of convenience and propriety should here control, as in other cases where a recovery in one action is permitted, in order to prevent unnecessary litigation by multiplicity of suits.

The judgment should, as it may well do in a case like this, settle and determine the rights of the parties as to the entire sub-

ject of the litigation, so that, if acquiesced in, no further controversy will remain.

The allowance of interest on the fair annual value of the use and occupation of the premises, during the period they were wrongfully withheld, was a proper subject for the consideration of the jury in determining the amount of damages which the Plaintiff was entitled to recover. Such damages are generally designated mesne profits: that is to say, what the premises were reasonably worth annually, with the interest, to the time of the trial. Less than this would not give the Plaintiff full and complete indemnity for the injury to his rights.

The measure of damages is that which would obtain in assumpsit for use and occupation (Holmes *v.* Davis, 19 N. Y. 488). If the jury in this case were of the opinion that an allowance for interest was necessary to a complete indemnity, they were at liberty to include it in their estimate of damages (Dana *v.* Fiedler, 12 N. Y. 51; Walrath *v.* Redfield, 18 N. Y. 457–461; Richmond *v.* Bronson, 5 Denio, 55). There was no error of which the Defendant can complain in the ruling of the Court as to the allowance of interest. It was quite as favorable as the Defendent could ask, and I will add, that in my judgment the Court might with propriety have instructed the jury that justice to the Plaintiff demanded an allowance for interest on the fair annual value of the use of the premises, from the possession of which he had been wrongfully excluded.

After a careful examination of the case, I can see no ground for reversing the judgment of the Supreme Court.

Affirmed.

JOEL TIFFANY,<br>State Reporter.