## RUTH E. DEAN, Respondent, *v.* THE ÆTNA LIFE INSURANCE COMPANY, Appellant.

*Policy of insurance — premiums — power of agent to extend time of payment of — Proof of death — what notice sufficient — Entries in books — when inadmissible*

This action was brought by the plaintiff to recover the amount of two policies of insurance, issued by the defendant upon the life of her husband. On the trial it appeared that the defendant's general managing agent in this State, agreed with the deceased to extend the time of payment of the premiums, due September 20, 1869, until the fifth of November following. On the second of November, a tender was duly made of the money payable, which the agent refused to receive, Mr. Dean being then ill. *Held*, that the plaintiff was entitled to recover; that the general agent had authority, as such, to waive the condition of the policy requiring prepayment of the premiums, and that his acts were binding on the company, whatever his secret instructions might have been.

After the death of Dean, the agent refused to give to the plaintiff's attorney the blanks used in making up the proofs of death, on the ground that the defendant did not recognize the claim. Subsequently, the proofs were made up and presented to the agent, who refused to receive them, telling the person who presented them, to send them to the president of the company, which was done by mail. The agent testified that the proofs were sometimes left in his hands to send forward; that he often directed persons to send proofs of loss to the president; that there was no regular rule about it; and that they were often sent by mail by the parties. *Held* (1), that these facts were sufficient to show the performance of the condition of the policy as to proofs; (2), that the refusal of the agent to give the blanks, on the ground that the company would not recognize the claim, rendered it unnecessary to send the proofs.

The defendant offered to show that the policies were canceled in October, before Dean died, by entries made by the defendant. Prior to this offer, the agent had testified that in October both policies were canceled and returned to the company for non-payment of premium. *Held*, that the evidence was properly rejected. That the defendant could not affect the rights of the plaintiff by any entry in its books to which she did not assent, and to which she was not a party.

Appeal from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

The facts are stated in the opinion.

*T. G. Strong*, for the appellant.

*J. H. Choate*, for the respondent.

Brady, J. :

The plaintiff claimed, as the widow of Henry Dean, the sums secured by two policies delivered to her, dependent upon the life of her husband Henry Dean. The premiums payable for the year during which he died, were payable on the 20th September, 1869, and, on or before that day, Morton, who was the defendants' general managing agent in this State, agreed with Henry Dean to extend the time of payment until the 5th of November, 1869 ; or, in other words, he gave Mr. Dean until the fifth, to pay his premiums. On the second of November, a tender was duly made of the money payable, and Mr. Morton refused to receive it, having, it would seem, in an interview between Mr. Dean's representative and himself, discovered that Mr. Dean was then ill. The evidence on the subject of the agreement to waive the payment of the premiums, in exact conformity to the terms of the policy, was in conflict, the defendants' agent, Morton, denying that it was as asserted on behalf of the plaintiff. The question was submitted to the jury on this conflict, and decided by them in favor of the plaintiff. It is not deemed necessary to consider the evidence in detail. It is sufficient to say, that it abundantly sustains the conclusion at which the jury arrived. The further question was also submitted to the jury, and found also in favor of the plaintiff, whether the defendants had received the proofs of death contemplated by the policy. Several exceptions were taken during the trial, and to the charge of the justice presiding, and to his refusals to grant requests made, which it will be necessary to consider. It may be here remarked, however, that the authority of the general agent, as such, to waive the condition of the policy requiring prepayment of the premiums, cannot be doubted, and that his acts thereto are binding on the company, whatever his secret instructions may be. Such is the established rule of law in this State.* In this case, assuming the agreement to waive the prepayment, and to wait for it until the 5th November, 1869, to have been made, as alleged on behalf of the plaintiff, there can be no doubt—indeed it is not denied—that it was in terms sufficient to accomplish the object for which it was made.

---

* Sheldon v. Atlantic F. & M. Ins. Co., 26 N. Y., 460; Wood v. Poughkeepsie Ins. Co., 32 id., 624; Bodine v. Exchange Fire Ins. Co., 51 id., 122; Boehen v. Williamsburgh City Ins. Co., 35 id., 532.

The jury having declared that it was made as averred, and that the requisite proofs were furnished, it follows, that, unless some error of law was committed requiring a reversal, the judgment must stand. The answer of the defendants set up two grounds of defense, namely: the forfeiture of the policies, by the failure of the plaintiff and her husband to fulfill their conditions, and the failure of plaintiff to give due notice and proof of the death, in accordance with the rules, by-laws and practice of the defendants. The defenses were not established, nor was either of them. It will be perceived that the averment as to notice, is of the want of *due* notice, or notice or proof in accordance with the rules referred to. The proof furnished on that subject by the plaintiff, was —

1st. That Morton refused to give to the plaintiff's attorney the blanks used in making up the proofs, on the ground that the defendants did not recognize the claim.

2d. That the proofs, subsequently made up, were presented to Morton, who declined to receive them, telling the person who presented them, that they should be sent to the president of the company, which was done by mail, and last by Morton's admission that they had been received by the defendants. Morton said, on his examination, that the proofs were sometimes left in his hands to send forward; that he often directed persons to send proofs of loss to the president; that there was no regular rule about it; and that they were often sent by mail by the parties. These facts were quite sufficient to show the performance of the condition of the policy as to proofs, and to justify the result on that subject, at which the jury arrived. The defendants' managing agent, when acting with reference to the proofs of loss, was acting within the scope of his agency. He sometimes took them to send forward, and sometimes directed them to be sent by mail. This practice was acquiesced in, on his own statement. If it were not so, however, the defendants, through him, having refused to give the blanks because the claim was not recognised, rendered it unnecessary to send the proofs. They placed their declination, not upon the ground that they were under no obligation to furnish them, or that they did not believe in the death of Mr. Dean, but upon the ground, assuming the death to have occurred, that they would not recognize the

claim, and therefore would not pay it. This was a waiver of proofs.*
In addition to the exception just considered, the defendants took
others, prior to the motion to dismiss the complaint, which must
be briefly noticed. It appeared on the trial, that, on the 1st of
November, 1869, when the representative of Mr. Dean went to the
office of the defendants, a memorandum was given him, showing
the amount to be paid by Mr. Dean before the fifth of that month,
and, after the death of the latter, two memoranda were found
among his papers, to the same purport, which were introduced in
evidence under the defendants' exception. They were subsequently
shown to have been sent by the defendants to Mr. Dean, and, as
they bore upon the arrangement of September, in reference to the
alleged division of the premiums, were clearly competent. They
were admissions that such a division had been agreed upon, on their
part, and were so far corroborative of the plaintiff's version of the
controversy. The ground of the objection to them, was that they
were immaterial, but it is very clear, for the reason stated, that
they were pertinent to the real issue in the case. The defendants
also excepted to proof of an interview with their agent, Mr. Mor-
ton, after the death of Mr. Dean, in reference to the arrangement
made with the latter prior to his death, on the ground " that decla-
rations and statements of Mr. Morton, on that occasion, in reference
to past transactions, could not affect the defendants, and as imma-
terial." In answer to the question, the witness said : " Mr. Morton
said that Mr. Dean had come to his office and said he was afraid he
would have to give up his policies, for he had not got the money
to meet the premiums," and I urged him not to give them up, and,
to make it easier for the old gentleman (he used those words), I
divided it up into four quarterly payments, and I prepared the notes
for him to sign ; he finally came in, sat down at the desk, took up
a pen, and signed some of the notes; and then, without saying a
word, put down his pen and went out; and that was the last I saw
of him. I asked him what he did with those notes; well, said
he, I looked upon them as amounting to nothing; the business
was not finished ; and after awhile, I tore them up and threw them

---

* Phillips on Ins., 2 vol. 1803 (lechon); Francis v. Ocean Ins. Co., 6 Cowen, 404;
O'Neil v. Buffalo Fire Ins. Co., 3 Coms., 122; Post v. Ætna Ins. Co., 43 Barbour,
351.

into the waste basket. He said Mr. Dean had come to him, and that arrangement or talk was had at the time the premium was due." Assuming that this evidence was prohibited, within the rule that the declarations of an agent, not engaged in the performance of any act relating to his agency, is incompetent, it is nevertheless very clear, that it was not in any way injurious or prejudicial to the defendants; it was in contradiction of what the plaintiff claimed to have occurred on the occasion to which it related, namely, the signing of all the notes necessary to consummate the policies and the agreement to extend the time of payment of the premiums to the fifth November, which was the only remaining ceremony necessary to complete the transaction. It was a statement which, if true, showed conclusively that the preliminaries, indispensable to the completion of the contract, had not been performed; that all the notes had not been signed; that the matter was left unfinished by the deceased; that the business was not perfected; that Morton looked upon the two notes signed, as amounting to nothing, and that he tore them up and threw them into the waste basket. This was substantially the statement made by Morton himself, as appears by the extract from his evidence as follows: "On the 20th of September, 1869, he came in again; that was the day upon which his premiums were due; and, after a good deal of conversation, I pressed upon him to keep up the $5,000 policy, by quarterly payments, showing that he would not have a great deal of money to pay, and he rather, after a time, assented to it; so much so, that I thought he would do it. I told him he could get the money from his friends; that anybody would lend him that amount to keep his policy up, at his time of life. The premium was $202 — about sixty dollars with interest added — something over sixty dollars, the first payment, and about fifty dollars on three subsequent payments. He had notes prepared; my young man, in preparing the notes for the quarterly payments on the $5,000, filled up the blanks for the other; he did not comprehend what was to be done — the bookkeeper I had in my office. They were all laid down on the desk, and Mr. Dean signed two. I suppose I can tell what was done with these notes. There were two others, which he should have signed toward the payment of that policy. He hesitated a long time between the two signatures for the two notes. There were four of

them to be signed, and he signed two, to pay the $5,000 policy, and there was about sixty dollars in money to pay. He sat fifteen minutes between the signing of the two; pushed them back from the desk; the others were lying loose there; they had not been signed at all; he pushed them back and moved away from the desk, and went out of the office. I supposed he was going to return; he said he would see what he could do, and seemed embarrassed in his mind about not being able to get the money; seemed not to know where to look for the money. It occurred to me, he had gone out for the money, to settle for the one policy, but he did not come back again, and I never saw him after that day."

The only difference which is of any moment, is, that Morton makes the signing of the notes apparently relate to the policy of $5,000 only; but it will be perceived, on examination of his testimony, that the transaction was not thus confined. Morton, notwithstanding this attempt, says that his young man, in preparing the notes for the quarterly payments on the $5,000 policy, *filled up the blanks for the other.* " They *were all laid down on the desk,* and Mr. Dean signed two." If the $10,000 policy was not to be included in the agreement, why were they not taken away when discovered ? Why was Mr. Dean permitted to begin the signing *of all the notes ?* They were all laid down before him, and for no other purpose than that they should be signed, in accordance with the conclusion at which they, Dean and Morton, had arrived, from the interview which was about to close. This narrative of Morton's, even in the respect named, does not therefore substantially differ from that given by the witness, but the difference, if any there be, is wholly immaterial, because the result of the meeting between Dean and Morton, was the same as stated by both Morton and this, the plaintiff's, witness, and it was that the agreement was not completed. The deceased signed only two of the notes; sat fifteen minutes between the signing of the two; pushed the notes back, and left the office, not to return. Morton never saw him afterward. This is Morton's account. The effect of both pieces of evidence, is, that nothing was finished, either in regard to one or the other of the policies, and it is clear therefore, that the evidence could do the defendants no injury. It was not in support of the plaintiff's case. It was in harmony with, and

in aid of, the defendants' case. If the plaintiff did not show an entirely different state of facts, the defendants must have succeeded. She recovered on an agreement completed, and this testimony did not in any way tend to show the contract, she set up, in any respect in which it was denied. It was, indeed, in decided hostility to the proposition, that such an agreement, as she averred to have been made, had *in fact been completed.* The exception should fail, for these reasons.

These are all the exceptions taken prior to the motion to dismiss the complaint, which was made chiefly upon the assumptions that the evidence established or failed to show facts, which either operated to the defendants' benefit, or against the plaintiff's right to recover.

It is not necessary to consider them in detail. It is enough to say that the defendants' counsel was mistaken, in his estimate of the effect of the evidence given, and in his view of the failure of proof, which he asserted. The evidence had established a *prima facie* case, and one which it became the imperative duty of the court to entertain, and therefore to submit to the jury. The motion was properly denied. The defendants' counsel also offered to show that the policies were canceled in October, 1869, before Mr. Dean died, by entries made by the defendants, but this offer was made after Morton had stated as follows: " In October, 1869, premium canceled; that is, both policies were canceled and returned to the company for non-payment of the premium." The value of the entry, after this evidence, is apparent. The policies had been returned by the agent here, if at all, and the entry must necessarily have been predicated of such return. The evidence, however, was inadmissible. It was substantially a declaration of the defendants, that they regarded their liability as having ceased. They could not deprive the plaintiff of any right, or affect her rights, by any entry in their books to which she did not assent, and to which she was not a party. This testimony, and the attempt to show whether, in the statement of the defendants' affairs, the policy was returned as one of its assets or a lapsed policy, were properly excluded. The defendants also excepted to the exclusion of a question asked of Morton: " Had you any more authority to extend the time of payment, than to waive the forfeiture of a policy after it had lapsed ?" The exception was

not well taken, for several reasons, one of which alone is sufficient, and that is, that, notwithstanding the exclusion of the question, it was immediately answered by the witness, who said he had no right to extend the time, or waive the forfeiture.   The defendant also excepted to the proof of an interview, on the 12th November, 1869, between Mr. Keese and Morton, the object of which was to contradict him, and in that way to assail his credibility.   The attention of Morton had been called to the conversation, on cross-examination, and the foundation laid for the procedure.   It related to a material fact, which was indeed the gist of the plaintiff's action, namely: whether the time for the payment of the premiums had been extended, without proof of which the plaintiff could not recover.   Morton denied that he had said to the witness, on the twelfth of November, several things on the subject, the leading and important feature of which was the waiver of the prepayment, at the time designated by the policy.   The defendants' agent having, as alleged, made the agreement thereto, and having denied that he did so, it became important to show his conflicting statements on the subject.   He had testified to the existence of a material fact within the issue, and such statements were clearly admissible, with a view to affect his credit.*   The exception cannot be sustained. The defendant also excepted to the admission of the receipt, signed by Morton, of Mr. Dean's note, payable sixty days after date, for the premium on his policies in 1868; but the exception has no merit.   It was admitted by Morton, on cross-examination, that sixty days had been given Mr. Dean to pay his premiums, and the receipt showed the manner in which it was done.   If the evidence were inadmissible, it related to a conceded fact, and could not therefore possibly prejudice the defendants.

The exceptions taken to the denial of the defendants' second motion to dismiss the complaint, were not well taken.   The grounds assigned, did not warrant any other disposition of that motion.   It was substantially a reiteration of the former motion, and was doomed to the same fate.   A careful examination of the exceptions of the charge and the refusals to charge as requested, discloses no error in law.   The defendants' case was tried upon theories which were never abandoned, and which their counsel tried to make dominant, but without success;

* Patchin v. Astor Mutual Ins. Co., 3 Kern., 268.

the most prominent of which was, that the defendants' agent, Morton, had no authority to extend the time of payment, derived from the defendants, but he encountered the legal difficulty constantly, that in law he had such authority, according to adjudged cases. It appears also, that the plaintiff's right to recover depended upon questions of fact, about two of which at least, there was conflicting evidence, and upon which the jury were to determine them. The judge presiding, pointed them out, and called the attention of the jury to the conflict, so that they fully understood the responsibility cast upon them. These questions were:

1. Whether or not the defendants, through their agent, Morton, extended the time for the payment of the premiums, the other preliminaries, such as the signing of the necessary notes, having been complied with.

2. Whether, if it was extended, the tender of the money to be paid, was made in time; and

3. Whether the plaintiff gave such proof of loss, as was sufficient under the policy, and the laws governing such contracts.

All these questions were fairly disposed of by the jury on the whole evidence. The defendants were fully and ably defended. The vigilance of their counsel let no chance pass by, which would avail them, and hence, a multitude of exceptions in the case. The struggle seems to have been a hard one, on the part of the defendants, to relieve themselves of a liability duly incurred; but the facts and circumstances were too strong to be overcome, and they failed. An impartial investigation of the evidence given on the trial, shows, as already suggested, the complete justification of the jury, in rendering their verdict on the main issues in favor of the plaintiff. In one respect, however, we think there was an error committed. The policy provides, that, in case the sum secured shall become payable, all indebtedness of the party to the company, shall be deducted. The premiums for the year 1869, and payable on the twentieth September of that year, were not paid, and should have been deducted. They were payable before the death occurred. They amount to $2,997.60, and this sum should be deducted from the amount of the judgment. Ordered accordingly, and that the judgment be affirmed for the balance, without costs of the appeal to either party.

DANIELS, J. :

By the express terms of both the policies in suit, the premiums upon them were made payable on or before the twentieth day of September, in every year during their continuance; and each contained the statement, that it was understood and agreed, that in case the premium should not be paid on or before the days mentioned for the payment thereof, the policy should cease and determine. The premiums which became due and payable on the 20th day of September, 1869, were not paid on or before that day; and the consequence resulting from that circumstance, was, that the policies ceased and determined, unless the time for the payment was extended by some agreement or arrangement binding on the company. That such an agreement had been made, was a fact to be satisfactorily established by the plaintiff, before her right to recover upon the policies, could be maintained. And that, she endeavored to prove. The evidence given in support of that fact, consisted of. the declarations and statements of the defendant's general agent, in charge of its business at the city of New York. These statements were made on the 2d of November, 1869, and also a few days after the decease of the person whose life was insured by the policies, who died on the nineteenth of November of that year. They tended to show that an agreement was made between him and the defendant's general agent, on the twentieth of September preceding, by which the payment of the premiums for that year, was so far extended, that no part became due until the 5th of November, 1869. And it was shown, that payment of such part was tendered to the agent, and refused by him, after the statements were made, and before that day. At the time when the statements were made by the agent, admitting that he had made an agreement on the 20th of September, 1869, extending the time for the payment of the premiums for that year, he also delivered to the person he had the interview with, written memoranda, indicating the amounts required to be paid according to the terms of that agreement. But they did not, of themselves, constitute such agreement, and were not delivered by the way of renewing, or entering into it. The witness who received them, stated that the agent gave him the memoranda, " as indicating the arrangement which he had

previously stated" to him, and as such, they were no more than the oral declarations of the agent, reduced to writing.

Two other memoranda, signed by the defendant's agent, were found among the papers of the person whose life was insured, after his death, and were received in evidence on the trial. But they were evidently made before the 20th of September, 1869, because they call attention to the fact, that the premiums on the policies would become due on that day, and request payment of the amounts. That is succeeded by certain figures, unexplained, upon the papers, which, with the explanation afforded by the agent's declarations, may possibly tend to indicate the existence of the agreement relied upon to sustain the recovery. But if they are capable of being used in that manner, it could not be done without the declarations themselves. So that if they were incompetent evidence for use in the case, nothing was proved by them from which an agreement for the extension of the time for the payment of the premiums, could be inferred. Substantially, that depended upon the declarations of the agent, for proof of its existence; without them, there was nothing from which the extension of the time for the payment of the premiums, could properly be found as a fact. In this state of the proof, and after the evidence was all taken, the defendant moved for a nonsuit, specifying, among other reasons in support of its motion, that it was not proved that the conditions of the policies, as to payment, were waived, and the time of payment extended, by the defendant, or any person authorized to do so upon its behalf. The motion was denied, and the defendant excepted.

If this objection had been broad enough to present the question, whether the agent's declarations were competent evidence to show an extension of the time for the payment of the premiums against the defendant, it would have been in time, although the proof had been received without objection. Those declarations were not competent evidence of the existence of an agreement, made six weeks before the time when they were made, against the defendant, the principal of the agent making them. * And the omission to object to them when they were offered, did not deprive the defendant of the right to insist upon their incompetency, at the close of the evidence, or any other time during the progress of the trial. This was

* Anderson v. Rome, etc., R. R. Co., 54 N. Y., 334.

substantially held in the case of *Hamilton* v. *N. Y. Central R. R. Co.*\* But the objection actually taken, did not present this point for the decision of the court. It simply presented the objection, that the agent was not authorized to waive or extend the time of payment of the premiums. Whether the proof, given to show that an agreement had been made for the extension, was competent proof for that purpose, was not mentioned nor suggested. Neither this motion nor the grounds specified in its support, nor any other objection taken during the trial, presented that question. And, as it was not raised at any time during the trial, it was necessarily waived when the case was submitted to the jury. The defendant had the right to have the case tried, if it so elected, on incompetent evidence, and the omission, at any time, to object, is conclusive evidence of such waiver. By such conduct, even the right to a trial by jury may be waived. †

The plaintiff offered in evidence a note made on the 20th day of September, 1868, given by the person whose life was insured by the policies, for the payment of the premiums upon them, in sixty days after its date, containing the agreement that the policies should be null and void, if the note should not be paid when it was due. This was objected to by the defendant, on the ground that it was immaterial. The objection was overruled, and the defendant excepted. In one respect this was material evidence. For the authority of the agent to extend the time for payment of the premiums, was controverted by the defendant. And if that had previously been done by him, with the approval of the defendant, it was a fact tending to show the existence of the authority. When the agent himself was examined as a witness, the defendant showed the transaction of 1868 fully by him. And it appeared from his evidence, that the papers, including this note, were sent to the defendant, which made no objection, but approved of the arrangement. This was all competent, for the purpose of showing the agent's authority to change or extend the time fixed for the payment of the premiums. The agent, on the defendants' examination of him,

\* 51 N. Y., 100.

† Greason v. Keteltas, 17 N. Y., 491; Penn. Coal Co. v. Del. & Hud. Canal Co., 1 Keyes, 72; West Point Iron Co. v. Reymert, 45 N. Y., 703; Fisher v. Hepburn, 48 id., 41 ; Delaney v. Brett, 51 id., 78.

showed that a receipt had been given when the note was taken, and there could be no well founded objection against afterward receiving the receipt itself, for the purpose of having its precise terms in evidence. It was a material part of the transaction, which the defendant had taken pains to prove, and there could be no impropriety in reading it, to show exactly what had been done, so far as that appeared by the receipt.

The delarations proved to have been made in one of the interviews after Mr. Dean's death, and which were objected to, as incompetent, by an objection expressly confined to the particular occasion, then mentioned, did not tend to prove the existence of any valid agreement for the extension of the time, fixed by the policies for the payment of the premiums; and, for that reason, the exception, taken to the decision allowing them to be proved, can be of no service to the defendant. The admission of the agent, shown under it, tended to prove that the terms proposed, had not been complied with by Mr. Dean. And for that reason, it was entirely ineffectual as evidence against the defendant. It maintained the position of the defendant, and tended to subvert the plaintiff's claim. *

The conversation which was stated by the witness Keese, was of the same general nature. He said that Morton told him, substantially, what he himself had said during the trial as a witness, so that it could not possibly have done the defendant any harm; and while it was objected to, it was not because it was incompetent, but simply because it ought to have been called out on the direct examination. The remark made concerning the preceding conversation, is equally as applicable as to the one just before considered. For it was no more than a repetition of what Morton, the agent, swore to himself.

The evidence sufficiently showed the service of the notice and proof of the death of the person whose life was insured, without the declaration of the defendant, that they had been received by the company. They were tendered to the general agent, and, after being refused by him, were mailed, under his direction, to the president of the company, at its place of business in Connecticut, and that, certainly, should be sufficient to prove a compliance with the

*Vandevoort v. Gould, 36 N. Y., 639, 644.

terms of the policy on this subject. Besides that, it appeared that the refusal to pay was placed by the company on the omission to pay the premiums, and that would be sufficient to constitute a waiver of all proof of death. *

An objection was taken to the copy of the notice and proof of death, offered in evidence. But it was not objected to because it was a copy. The objection was expressly placed on the reasons, that it did not appear that the original came to the possession of the company ; that the fact of mailing was not such evidence of its receipt, as to justify the admission of a copy in evidence. These reasons were not good, because the proof did show a proper service of the original. The tender to the agent, and mailing to the president as he directed, sufficiently showed the service of the notice and proof of death, to comply with the terms of the policy. The only authority opposed to the validity of such a service, is that of *Hodgkins* v. *Montgomery County Mutual Insurance Co.,*† and that was afterward reversed by the Court of Appeals. ‡ The agent appears to have been the general agent of the company at the city of New York, and he was authorized, as such, to transact all the company's business at that place, which included all that he did concerning this insurance. And for the reasons already given, as well as those mentioned by Mr. Justice BRADY, the judgment, after being modified as directed by him, should, with the order denying a new trial, be affirmed.

DAVIS, P. J., dissented, on the following grounds :

First. Incompetent declarations of the agent were admitted against defendant's objection. They were not harmless, because they were regarded by the court and jury as material and important, as appears by the charge, and because the ruling upon them established a rule of evidence for the case, and subsequent evidence of such declarations was given, to which it must be assumed the defendant omitted to object on that ground, in deference to the ruling that such declarations were competent.

Second. The fact that the policies were canceled in October was competent, as tending to corroborate the testimony of the agent

* Post v. Ætna Ins. Co., 43 Barb., 353; Cornwell v. Haight, 21 N. Y., 462.
† 34 Barb., 213.                                    ‡ 41 N. Y., 620.

that no extension was made. It was an act in the due course of business.

Third. There was no evidence in the case to establish the alleged waiver, except incompetent proof of Morton's declarations. The motion for nonsuit raised the question of absence of lawful proof of waiver. The overruling of the motion was error.

Fourth. The verdict was against evidence, and a new trial should have been granted on that ground.

The claim is of most suspicious character, and the evidence to uphold it, I think, was illegal and insufficient. I think a new trial should be granted.

Judgment, with modifications stated in opinion of BRADY, J., and order denying new trial, affirmed.