NEW-YORK.
May, 1807.

Ogden and
others
v.
Cowley

Judgment for the plaintiff.\*

**Ogden, Wilkins and Knox,** *assignees* **of Olcott, a**
*bankrupt, against* **Cowley, survivor of Cowley.**

In action
brought by
the assignees
of a bankrupt,
on a note due
to the bank-
rupt's estate,
the defendant
cannot set off
a check issu-
ed by a bank-
rupt, payable
to bearer,
bearing date
before the
bankruptcy,
unless he
proves further
that the
check came
to his hands
prior to the
bankruptcy.

THIS was an action of *assumpsit*, brought by the plaintiffs, assignees of *Olcott*, a bankrupt, under the late bankrupt law of the *United States*, against the defendant as indorser, with his deceased partner, of a promissory note, made by one *Brower*, for 1,987 dollars and 25 cents, dated the 11th July, 1799, payable three months after date. The defendant pleaded *non assumpsit* and payment; and gave notice of a *set-off*, for money lent and advanced to *Olcott*, and money had and received by him before he became a bankrupt; and a check dated the 13th day of October, 1800, drawn by *Olcott*, on the cashier of the bank of *New-York*, for 2,000 dollars, payable at sight to bearer; and another check, dated the 22d September, 1800, drawn by *Olcott*, on the bank of *New-York*, for

2,000 dollars, payable to bearer on the 22d October, then
next, held by *Brower*, and for which sum he was indebted to *Brower* before he became a bankrupt.

The cause was tried before Mr. Justice *Livingston*, at the *New York* sittings, the 27th December. 1806.

At the trial the plaintiff proved the making of the note, and the indorsement, and that payment was demanded on the 14th October, 1799, by a notary, who went to the house of *Brower* for that purpose, but found it shut up and no person there, and was informed on inquiry, that *Brower* was not in town. On the 15th October, the notary called at the house of the defendant and his deceased partner, for the purpose of giving them notice of the non-payment of the note, &c. but found their house locked up, and on inquiring at the next door, was told that they were gone out of town. On the same day, the notary put a letter into the post-office, in the city of *New-York*, addressed to the defendant and his partner, informing them of the non-payment of the note, and that the holder looked to them for payment. It appeared that the yellow fever prevailed in the city of *New-York* at that time.

*Olcott* became a bankrupt on the 6th October, 1800, and the plaintiffs were duly appointed his assignees. The defendant then proved both checks to have been issued by *Olcott*, and offered to prove that the check dated the 13th October, was in fact given antecedent to the act of bankruptcy by *Olcott*, and was dated forward ; that checks are frequently so dated when the drawer has not funds in the bank at the time. The counsel for the plaintiffs objected to this evidence as insufficient, unless it was shown further that the checks were held by the defendant and *Brower* at or before the 8th October, 1800; but the defendant offered no evidence of that fact. *Brower*, the drawer of the note, became a bankrupt in 1801, and the check dated the 22d September, 1800, was found by his assignees among his papers.

NEW-YORK,
May, 1807.

Ogden and
others.
v.
Cowley.

On this evidence the judge was of opinion that the defendant had not supported his plea, and that the plaintiffs were entitled to recover, and so directed the jury, who found a verdict for the plaintiffs for the amount of the note.

A motion was made to set aside the verdict. 1. Because the proof of the demand of payment and notice was insufficient to charge the indorsers. 2. Because, if the defendants were liable on the note, they were entitled to set off the checks. 3. That the judge ought to have admitted the evidence to show that one of the checks, dated after the bankruptcy of *Olcott*, was in fact issued before·

*Radcliff.* 1. It was the duty of *Olcott*, or his agent, when he found that the defendant was not at his house, to have made inquiry after him, so as to ascertain the place of his actual residence. The defendant may have had a house in the country, where a notice might have been left. In the case of *Stewart* v. *Eden*,* the notice was rolled up and put in the key-hole of the door of the indorser's dwelling house. At least the plaintiff ought to have shown that the letter put into the post-office came to the hands of the defendant.

*2Caines,121.

The court have considered checks as *prima facie* evidence of value received, at the time they bear date, or are issued; and, unless the contrary be proved, they must be presumed to be issued *bona fide*, for the amount, and to be delivered at the time they bear date.† If so, the check dated the 22d September, must be considered as in the possession of *Brower* prior to the bankruptcy of *Olcott*; and it was incumbent on the plaintiff to prove the contrary. It would be a great hardship to oblige the *bona fide* holder of a check which passes as cash, to prove the time it came into his possession.

† He cited
*Cruger* v.
*Armstrong* &
*Barnwell*,
decided in
Jan. term,
1802.

3. Evidence that the other check, though dated the 13th October, was in fact issued prior to the bankruptcy of *Olcott*, ought to have been received, and when taken

NEW-YORK.
May, 1807.

Ogden and
others
v.
Cowley.

in connexion with the other circumstances, was sufficient evidence to be left to the jury; but the judge rejected this evidence, and charged the jury decidedly in favour of the plaintiffs.

*Johnson*, contra. 1. Whether due notice has been given of a note or bill, must depend on the circumstances of the case. It is a question of due diligence, and the court will be satisfied, if the holder has taken reasonable care to send the notice. This case is clearly within the principle of the decision in *Stewart* v. *Eden*. The putting the notice into the post-office, addressed to the indorsers, and which there was a moral certainty they would receive, shows a greater diligence than to put a paper into the key-hole of the door of an unoccupied house. Where a party is out of town, the post-office is the ordinary and fit mode of conveyance.

2. In the case of *Dickson and others* v. *Evans,** which is perfectly analogous to the present case, the question now before the court, as to the set-off, was expressly decided. Lord *Kenyon*, observed, that the cases of set-off were to be considered in the nature of cross actions; that if the defendant had brought his action on the indorsed note or check, it would have been necessary for him to prove the time the note was indorsed, or came to his hands.† The court of king's bench were all of opinion, as well from the reason of the thing, as from the language of the bankrupt act, and the authority of adjudged cases, that a set-off of a check or note could not be allowed, unless the party who wished to avail himself of such a fact in his defence, proved that it came into his possession previous to the bankruptcy. The proof, as to the time, must therefore rest on the defendant, and not on the assignees of the bankrupt.

But the check held by the defendant was, in fact, dated subsequent to the bankruptcy of *Olcott*, and the legal presumption is, that it was issued on the day it bears date.

* 6 *Term,* 56.

† *Lucas* v. *Marsh,* *Barnes* 453.

The other check held by *Brower* cannot be set off by the defendant, in an action brought against him by the indorsee of *Brower's* note: yet, if it could be set off, there is no proof that it came into the possession of *Brower* prior to the bankruptcy.

[* 278]

[\*]KENT, Ch. J. delivered the opinion of the court.

1. On the first point we are of opinion, that the demand and notice were sufficient. This case comes within the reason of the decision in *Stewart v. Eden.* (2 *Caines,* 127.) All proper steps were taken to make a demand on the maker of the note, and to communicate the requisite notice to the indorser.

2. The second point is within the case of *Dickson v. Evans.* (6 *Term,* 57.) The decision of the *K. B.* in that case is founded in good sense and sound policy, and I am disposed to adopt it. It would, as Lord *Kenyon* observes, be unjust if one person, who happened to be indebted to another at the time of his bankruptcy, was permitted, by any intrigue between himself and a third person, so to change his own situation, as to diminish or totally destroy the debt due to the bankrupt, by an act *ex post facto.* Such an act would be a fraud on the equality of the bankrupt act. The only question is, on whom does the *onus probandi* lie, of proving when the defendant came to the possession of the checks? It was held truly to lie on the party who wishes to make out his demand or defence, by a particular fact, and of which he is supposed to be conusant. This rule applies with peculiar force to the present case, because one of the checks bore date subsequent to the bankruptcy of *Olcott,* and both were payable to bearer. We are accordingly of opinion that the defendant did not entitle himself to set off the checks, and that the motion for a new trial must be denied.

Rule refused.