## Case No. 12,400.

### SAWYER v. HOAG.

[3 Biss. 293]. [1]

Circuit Court, N. D. Illinois. June, 1872.[2]

BANKRUPT INSURANCE COMPANY — RIGHT OF SET-OFF—ASSIGNED CLAIMS.

[One indebted to a bankrupt insurance company, by reason of his subscription to its capital stock, is not entitled to set off against his indebtedness an adjusted liability arising under one of its policies, which claim he purchased from the assured for one-third of its face value, with full knowledge of the company's insolvency, but before the institution of bankruptcy proceedings. Hitchcock v. Rollo, Case No. 6,-535, and Drake v. Rollo, Id. 4,066, followed.]

On the first of April, 1865, the complainant, Charles B. Sawyer, subscribed for fifty shares of stock of the Lumbermen's Insurance Company of Chicago. At the time of his subscription he was informed by the directors that he must pay or give his check for the full par value of his stock, and that the company would loan to him eighty-five per cent. of such par value on his note for five years at seven per cent. interest, secured to the satisfaction of the directors by good collateral securities. He thereupon gave to said company his check for $5,000, the full amount of the par value of said stock, and received from the company a check for $4,-250, and gave to the company his note for the amount of said check, payable in five years, with interest at seven per cent. per annum, and secured the same by assignment of fifty shares of stock of the Fifth National Bank of Chicago, $100 each, which securities were then, and continued to be, ample security for the payment of said note and interest. On the first day of March, 1870, Sawyer took up said note and gave in substitution thereof his note for $4,250, payable on demand, with interest at ten per cent. per annum, depositing the same security. On the third day of December, 1867, said company issued to Justin Hayes a policy of insurance against loss by fire to the amount of $5,000. The property mentioned in said policy was destroyed in the October fire, 1871, and on the 25th of January, 1872, said loss was adjusted by the company at $5,000, and a certificate of such adjustment, and the amount due and payable thereunder, was executed and delivered by the company to Hayes. On the same day, Hayes sold and assigned said certificate to the complainant for 33 per cent. of its par value. After the October fire, in 1871, and at the time complainant purchased said certificate of Hayes, it was a notorious fact, and well understood by the public and complainant, that said company was hopelessly insolvent. On the 20th of June, 1872, a petition in bankruptcy

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
2 [Affirmed in 17 Wall. (84 U. S.) 610.]

was duly filed against said company, which, on the 13th of September, 1872, was adjudicated a bankrupt, and the defendant, Hoag, afterwards elected assignee. Thereupon the complainant offered to set off his claim under said certificate against his indebtedness upon his note to the company. The assignee refused to allow it, and was at the time of filing of the bill, proceeding to collect said note, and to realize upon said securities without deduction of the claim of the complainant. The original transaction was regarded and treated by the company and complainant as a loan by the former to the latter, and his stock was at all times treated and regarded as fully paid. Both transactions were entered upon the books of the company as cash transactions. At various times after the giving of the original note, the company reported to the authorities of Illinois, and other states, that its capital stock had been fully paid in. The complainant, in his bill, prayed to have his claim under the certificate of loss set off against his note held by the assignee, and to have the collateral securities in the hands of the assignee returned to him.

Daniel L. Shorey, for complainant.

It is the right of a debtor of an insolvent insurance company to purchase adjusted and negotiable claims at a discount and set them off against his indebtedness, notwithstanding the purchaser knew the company was insolvent at the time he purchased them. Under the 20th section of the bankrupt act of 1867 [14 Stat. 526], in cases of mutual debts or credits between the parties, an account is to be stated, and the balance is to be allowed or paid. Two conditions only are required by the statute: 1st. That the claim to be set off shall be in its nature provable against the estate. 2d. That such claim shall have been purchased by or transferred to the debtor before the filing of the petition. The complainant is within both conditions. The claim is a provable claim, and it was purchased and transferred to the debtor nearly five months before the filing of the petition in bankruptcy. A certificate of loss is assignable under the statute of Illinois. Gross' St. p. 461. The assignee may bring an action in his own name on such an instrument. Stewart v. Smith, 28 Ill. 397.

The assignee, if sued by the person or company issuing such certificate, would have the right to set-off the same in such suit. Gross' St. p. 512. Under the bankrupt act his right of set-off is at least as well defined. He holds a claim, independent of the right of set-off, that is, in its nature, provable against the estate. Under that act, a claim to be set-off may be either a debt or a credit. "A debt which may be proved before the commissioners and to the owner of which a dividend must be paid, is a debt in the sense of the term as used in the statute." Tucker

v. Oxley, 5 Cranch [9 U. S.] 34. "A credit is such as in its nature must terminate in a debt." Rose v. Hart, 8 Taunt. 499.

It will not be disputed that on the purchase of the certificate the complainant had a right of action against the company thereon. If the company had sued the complainant on his promissory note, he could have pleaded his claim under such certificate as a defense in set-off. If the complainant had sued the company on his certificate, it could have maintained no other defense than a set-off under the note against him. If each party had recovered a judgment against the other on their respective claims, either would have the right upon a summary application to the court rendering such judgments, to have the one set-off against the other. Barber v. Spencer, 11 Paige, 518.

The relative rights of the parties are in no wise changed by the bankruptcy proceedings, and the assignee in bankruptcy has no greater or other right than the bankrupt would have had if there had been no such proceedings. Mitford v. Mitford, 9 Ves. 100; 2 Smith, Lead. Cas. 370. Under section 14 of the bankrupt act, rights of action of the bankrupt vest in the assignee, who may prosecute the same in the same manner, and with like effect as they might have been prosecuted by the bankrupt. The Massachusetts insolvent law of 1838 contained a similar provision, which is construed in Bemis v. Smith, 10 Metc. [Mass.] 194. If it is claimed that the assignee of the bankrupt has some other and higher right than the bankrupt would have, it is incumbent on those who make the claim to show upon what statute, upon what authority, or upon what legal principle the distinction in favor of the assignee is supported. The earlier bankrupt acts in England contained no provision in relation to set-off. This was regarded as a defect, and it was to remedy this inconvenience that the act of 5 Geo. II. was passed. Ex parte Prescot, 1 Atk. 230.

The several bankrupt acts in England and the United States from the time of Geo. II have fixed a time prior to which any claims acquired by the debtor to the bankrupt might be set-off. In all the English bankruptcy acts there is an element of uncertainty. In the earlier, the right of set-off could not be acquired after notice of an act of bankruptcy, insolvency, or stopping payment. In the latter acts, notice of insolvency and of stopping payment was omitted. In the act of 1867 the limit is fixed at the filing of the petition. The English authorities, from the time of Geo. II to the present, do not contain a single case where a provable claim has been disallowed in set-off if it had been purchased prior to the time fixed by the bankruptcy act in force for acquiring such claims.

For cases where set-off has been allowed, see Dickson v. Evans, 6 Term R. 57; Ogden v. Cowley, 2 Johns. 273; Hankey v. Smith, 3 Term R. 507; 2 Smith, Lead. Cas. 316. In Hawkins v. Whitten, 10 Barn. & C. 217, a case under the act of 6 Geo. IV, c. 16, § 50, which gives the right of set-off in all cases where it existed before any act of bankruptcy had been committed, or where there was no notice of such act, the defendants, two days after they had knowledge that the bankrupts had stopped payment and shut up their banking house, industriously procured notes of the bankrupts for the purpose of set-off. The court held that notice of insolvency, or notice of stoppage of payment, is no longer an ingredient upon the point of set-off. Notice of an act of bankruptcy is alone the criterion or dividing point, and although these notes were purchased for the very purpose of making them the subject of a set-off, still this has not been prohibited, and cannot be said to be illegal. The English authorities reaching back under the several bankruptcy acts nearly one hundred and fifty years, probably do not contain one case in conflict with the decision in the case last cited. The latest cases in the high court of chancery maintain this doctrine to its fullest extent. In re Universal Banking Corp. (Ex parte Strang) 5 Ch. App. 492. See, also, In re City Bank of Savings [Case No. 2,742], Dist. Ct. Cal. There is nothing in the act of 1867 narrowing the right of set-off as it previously existed. It has fixed the limit of time for purchasing claims in set-off at the filing of the petition in bankruptcy, and thus avoided the uncertainty of the English statutes upon which this act was modeled.

In New York the rule is well settled that claims may be purchased by a debtor to the bankrupt for the purpose of set-off, at any time prior to notice of proceedings in bankruptcy. Ogden v. Cowley, 2 Johns. 274; Smith v. Brinkerhoff, 6 N. Y. 305. There are a few cases holding that under the banking law a set-off cannot be procured after the bank has stopped payment. Diven v. Phelps, 34 Barb. 224. Also cases holding that members of insolvent mutual insurance companies cannot set-off losses due to them against claims of the company, on the ground that such members hold the double relation of debtor and creditor, and have voluntarily entered into engagements that modify the general rule of set-off. It is not worth while to consider whether these cases are well decided, for they expressly limit the effect of the decision to cases of mutual companies, and at the same time incidentally affirm the general rule relied on in this argument. Lawrence v. Nelson, 21 N. Y. 158.

Under the insolvency law of Massachusetts of 1838 [Laws 1838, p. 452], the right of set-off accrues at the time of the first publication. Demmon v. Boylston Bank, 5 Cush. 194; Aldrich v. Campbell, 4 Gray, 284. The ruling in this last case was not modified by the case of Smith v. Hill, 8 Gray, 572; as contended by counsel for defendant. On the contrary, the court decided the case in Smith v. Hill wholly upon the facts peculiar to the

latter case, and the decision left the case of Aldrich v. Campbell undisturbed. There is no possible parallel between the facts in Smith v. Hill and the facts of the case now before this court. There is nothing to distinguish this case from the cases of Aldrich v. Campbell and Hawkins v. Whitten, before cited. In all three of the cases alike, the claim was purchased against a party in failing circumstances, for a good but less than a full consideration, for the purpose of a set-off. In Smith v. Hill, on the part of the debtor, there were promises not fulfilled, there was a trust sought to be violated, and acts designed to mislead. In this case there is not an intimation that any of such facts exist.

The fact that the complainant, at the time of the purchase of his claim in set-off, was a stockholder of the company, imposes upon him no peculiar disability in relation to the purchase of such claims. The relative rights of the company and of himself are the same as the rights between the company and a stranger. The corporation is a legal entity, having a separate existence as a person distinct in law from all its members. It is so created for the express purpose of having a distinct and independent existence and capacity in legal contemplation, so that it may contract or be contracted with, sue or be sued by any of its members. Massachusetts Iron Co. v. Hooper, 7 Cush. 187; Smith v. Hurd, 12 Metc. [Mass.] 384; Hill v. Manchester & S. Waterworks Co., 5 Barn. & Adol. 875; Ang. & A. Corp. 413; Pondville Co. v. Clark, 25 Conn. 97.

The conceded facts show that the original transaction was regarded and treated by the company and the complainant as a loan from the company to him, and his stock was at all times treated and regarded as fully paid. It was not permissible for the company to treat this transaction otherwise than as a loan. The complainant could not treat it otherwise. The assignee cannot now treat it otherwise, for he has no greater rights as against the complainant than the company had. But admitting, for the purposes of the argument, that complainant's indebtedness is for his original stock, there is nothing in principle to distinguish such indebtedness from any other, and it does not follow as a conclusion of law that he could not offset it by the claim in controversy. The rule of set-off, as established in the bankrupt act, makes no distinction as to the nature of the debts against which a set-off may be allowed.

This precise question has been fully considered by the English high court in chancery in Re Universal Banking Corp. (Ex parte Strang) 5 Ch. App. 492; in Re Duckworth, 2 Ch. App. 578. See, also, Pondville Co. v. Clark, 25 Conn. 97.

[NOTE. This case was heard and taken under advisement at the same time with Hitchcock v. Rollo. Case No. 6,535, and Drake v. Rollo. Id. 4,066, and the bill was dismissed on the grounds stated in the opinions in those cases.]

[On appeal to the supreme court, the decree of this court was affirmed. 17 Wall. (84 U. S.) 610.]