Judge Crenshaw
delivered the opinion of the Court.
Emily Parker and others, persons of color, brought this suit for freedom, and base their rights thereto upon the following instrument:
“I, Samuel Peaco, of the city of Annapolis, in Anne Arundel county, in the state of Maryland, do hereby set free from bondage the following negroes, purchased by me of John Callahan and Mary Mann, viz: negro woman Rose, on the 25th day of July; 1802; negro girl Kitty, on the 25th day of July, 1817, and negro girl Harriet, on the 25th day of July, 1825; also the negro girl Poll, which I purchased at Col. Chew’s sale of negroes, who is aged about nine years and six months, on the 25th day of January, 1814, and likewise the negro woman named Rose, that I bought of Eleanor Davidson, executrix of John Davidson, this present day; and I do, for myself, my executors, and administrators, release unto the negroes aforesaid, all my right and claim whatsoever as to their persons, or to any estate they may acquire after the dates to each person respectively affixed as aforesaid, and hereby declaring the above mentioned negroes absolutely free, without any interruption from me or any person claiming under me.” This instrument is signed by Peaco, and is dated the third day of August, 1798..
The plaintiffs are descendants of the girl Poll, mentioned in the foregoing deed, and are children and grand-children of Lucretia, who was a daughter of Poll, and was born about the year 1807, before the 25th day of January, 1814, at which time Poll, by virtue of the deed, was no longer to be subject to service at the command of another.
The only question is, whether by the terms of the deed Poll was immediately set free, with a postponement of the enjoyment of her freedom till the 25th day of January, 1814, or whether freedom attached to her at all before that time. If, by the deed, she was immediately emancipated with a postponement of its enjoyment merely, then Lucretia, who was *280 born after the date of the deed, was free, notwithstanding her birth took place 'before the 25th day of January, 1814, and her descendants, the plaintiffs, according to the maxim, partus sequitur ventrera, would also be free.
2. Deeds should coneWeriug^aU the parts thereof. Slid S66 tllClfc ihey harmonize,
But we apprehend the deed is not reasonably susceptible of such a construction. The substance of the deed in reference to Poll will read thus: “I, Samuel Peaco, do hereby set free, on the 25th day of January, 1814, the following negro girl Poll, aged about nine years and six month, and I do, for myself, my executors, and administrators, release unto said negro girl all my right and claim whatsoever as to her person, or to any estate which she may acquire after the date aforesaid; and hereby declaring the above mentioned negro 'absolutely free, without any interruption from me or any person claiming under me.”
If the deed be considered apart from its last clause, no multiplication of words can make it plainer than the language of the deed itself, that Poll was not emancipated till the 25th day of January, 1814, and that the right and claim of the grantor to the person and estate of Poll, acquired before that period, was not surrendered. In other words, we think this language of the deed does not import emancipation in presentí, to be enjoyed in futuro, but imports emancipation on the 25th day of January, 1814, and not before.
This construction we think is not at all impaired or altered by the last clause of the deed, which reads: “And hereby declaring the above mentioned negro absolutely free, without any interruption from me or i • • i .. mi J i j i any person claiming under me. ihe deed must be construed as a whole; all its parts are to be considered and made to harmonize and consist, if practicable, and there is no difficulty, in our opinion, in making this clause consistent and harmonious with the entire preceding parts of the deed. The latter clause is a continuation of the sentence in which it *281 is declared substantially that the right and claim of the grantor to the person and acquisitions of Poll, are not released to her until the 25th day of January, 1814. The first branch of the sentence is not inconsistent, but in harmony with the granting part of the deed, in which it is declared that Poll shall be free on the 25th day of Januaxy, 1814, and if the last clause is made to consist with the first branch of the sentence, then all the different clauses are made to consist together and to hai’monize, and not otherwise. Unless this clause can be made to harmonize with the preceding clauses of the deed, then, indeed, the only effect to be given to it is that Poll was absolutely free, instanter, without any right remaining in the grantor to control her services even till the 25th day of January, 1814. To give the deed such effect, would be suicidal and at war clearly with the intention of the grantor. To make the last clause consistent with the other clauses of the deed, it is only necessaxy to supply the words designating the time of freedom, which were employed in the preceding pax-t of the deed, which words are: “On the 25th day of January, 1814.” The last clause would then read: “And hex*eby declaring the above mentioned negro absolutely free on the 25th day of Januaxy, 1814, without any intexTuption from me or any person claiming under me.” Thus the after clauses are made to hai’monize with the fii’st clause of the deed, giving freedom to Poll on the 25th day of January, 1814.
The language of this deed, except the expression of the motives of the grantor, and his sentiments in regard to slavery, is not dissimilar to that employed in the deed of Baker, which was discussed and constraed by this court in the case of Hudgens vs. Spencer, 4 Dana, 589. And in that case the court say that the literal import of the deed, considered without any regard to the subject matter, or the declared motives of the .grantor, may be deemed to be that the beneficiaxies were not to be free persons until the respective pe *282 riods for their going out. The emancipating words of that deed were : “I do hereby emancipate or set-free the following men, women, and children, viz : Bob and Daniel, December 25th, 1790, &c.” and this language, the court say, imports that the manumission was prospective and coeval with the acknowledgment of the deed; and they say that such would be their construction of the deed were it not for the unequivocal sentiments expressed in it of the grant- or’s repugnance to slavery. From these sentiments mainly, strongly and .emphatically expressed, the court deduced the conclusion that it Was the intention of the grantor to give immediate freedom to the grantees from the acknowledgment of the deed, reserving to himself a right to the services of the slaves to a designated period. But it is manifest that the court, notwithstanding the emphatic avowal of sentiments and motives utterly inconsistent with slavery, were brought to their conclusion not without great doubt and hesitancy. No such considerations appear in this deed, and we are left to construe it, so far as its own expressions are concerned, according to its literal and grammatical import.
The other cases to which we have been referred by the counsel of the plaintiffs do not invalidate the construction which we have given to the deed. The case of Fanny vs. Bryant, 4 J. J. Marshall, 368, was made to turn upon the word “increase,” used in the deed ; and but for this word it is manifest that the court would have decided against the freedom of Fanny. The other granting words employed in that deed in regard to Julia, the mother of Fanny, except the words ‘her increase,’ are not unlike those which are used in the present deed, and the court declared that Julia was a slave at the birth of Fanny, and until the first of January, 1816, the period fixed for the determination of her servitude.
In the case of Charles vs. French, &c., 6 J. J. Marshall, 333, the grantor, after the strongest expressions of the sinfulness of slavery, and his hopes of for *283 giveness for the past, renounced all claim of power over man, and proceeded to “freely and immediately” liberate Susannah, the mother of Charles, to go free at the expiration of eight years; the court determined that such sentiments, being inconsistent with the right of dominion of man over man, it was the intention of the grantor to emancipate Susannah immediately, with a reservation of right to her services merely, until the expiration of eight years— that she was actually a free person, but not to go free until the termination of eight years.
The sentiments avowed in that deed are similar to but stronger than those expressed in the deed mentioned in the case in 4 Dana, supra, and besides the granting terms themselves, independently of the sentiment expressed, are not incompatible with immediate freedom. The grantor “freely and immediately liberated” Susannah, but she was not to “go free” until the end of eight years — that is, not to go out into the world, free from control, until the expiration of the designated period.
The remaining case to which we have been referred by plaintiffs’ counsel is that of O'Bryan vs. Goslee, 10 B. Monroe, 100.
The language of the will in that case was: “I give and bequeath to all my negroes their freedom; that my heirs or executors shall have no right or title to them after they arrive at the ages hereinafter mentioned — the males at twenty-eight years, and the females at twenty-five years.” This language imparts immediate freedom, with a postponement, simply, of its enjoyment. All the testator’s negroes were immediately liberated, but his executors or administrators were to have the right to control them until they should arrive at the designated ages.— ‘This, we think, was the fair and reasonable construction of will. But in the case under review the grantor did not, when all the different clauses of the deed are put together and made to harmonize,-confer immediate freedom, with a postponement of its *284 enjoyment, but deferred it until a specified time — he “set Poll free from bondage on the 25th day of January, 1814,” and not before.
3. It is not proper to resort to extraneous facts and surrounding circumstances in the construction of the writings, where the language is susceptible of a clear ■solution.
An effort was made to prove that the grantor in this deed was a Quaker, and entertained principles hostile to slavery, so as to bring this case under the influence of considerations like those mentioned in the cases in 4 Dana and 6 J. J. Mar., supra; but this effort signally failed of success, for whilst he is shown to have been a Quaker, and to have expressed sentiments in opposition to slavery, it was also proved that he sold Lucretia, the mother of Poll, to a southern trader. But would such extraneous proof be competent to illustrate a deed sufficiently plain of itself? Surrounding circumstances may be brought in aid of the construction of an instrument where its terms are of doubtful solution, but certainly where the language of an instrument is susceptible of clear solution, no resort can or should be had to extraneous testimony to illustrate it.
From the foregoing views it results that the chancellor erred in decreeing the freedom of the plaintiffs. Wherefore, the decree is reversed, and the cause remanded with directions that the petition be dismissed.
A petition for re-hearing filed but overruled.