## Case No. 6,743.

### HOVEY et al. v. HOME INS. CO.

[10 N. B. R. 224; [1] 13 Am. Law Reg. (N. S.) 511; 3 Ins. Law J. 815.]

Circuit Court, S. D. Ohio. Nov., 1874.

BANKRUPTCY— PURCHASE OF DEBTS BY BANKRUPT —SET-OFF.

A debt of one insolvent purchased by his debtor immediately prior to the filing of a petition in bankruptcy, and purchased in order to set the same off against his indebtedness, is protected by the bankrupt act [of 1867 (14 Stat. 517)], it only forbidding the set-off of claims purchased after petition filed.

[Cited in Lloyd v. Turner, Case No. 8,436; Mattocks v. Lovering, 3 Fed. 213.]

In bankruptcy.

SWING, District Judge. The petition in this case alleges that the Independent Insurance Company, prior to the 9th of October, 1871, had issued eight policies of insurance to eight several parties, and that prior to that date the defendant, the Home Insurance Company, for a valuable consideration, had issued to the said Independent Insurance Company policies of reinsurance upon each of said original policies of insurance in certain specified amounts. That on the 9th and 10th days of October the property covered by said policies of insurance was destroyed by fire; that the total amount

[1] [Reprinted from 10 N. B. R. 224, by permission.]

of adjusted loss upon said policies of reinsurance, is thirty-six thousand six hundred and seventy-two dollars; that the proof of said loss was duly made, and notice thereof given to defendant. And that the said sum of thirty-six thousand six hundred and seventy-two dollars is due and owing thereon from the defendant to the plaintiffs.

The defendant pleads the general issue, and files notice of set-off, in substance, that before the petition in bankruptcy had been filed, it had become, by purchase and assignment, the owner of five of the original policies of insurance reinsured by them, to wit: That to the Western News Company for ten thousand dollars; that to Henry W. King & Co. for fifteen thousand dollars; that to Simpson, Norwell & Co. for five thousand dollars; that to Hotchkin, Palmer & Co. for two thousand five hundred dollars; and that to C. P. Kellogg & Co. for five thousand dollars. That the property covered by these policies of insurance was lost and destroyed by fire; that due and legal proof of loss had been made, and notice thereof duly given; that the total amount of the adjusted loss upon the five policies was thirty-three thousand five hundred and fifty-three dollars and fifty-six cents, and asks to have said sum set off against the plaintiffs' demand; admits a balance due the plaintiffs of three thousand one hundred and thirty-nine dollars and sixty-six cents, which defendant claims to have tendered the plaintiffs. The reply is a general denial. The agreed statement of facts shows that the Independent Insurance Company issued the original policies of insurance, and the defendant issued the policies of reinsurance; that the property covered by the policies was destroyed by fire; that due and legal proof of loss was made, and notice thereof legally given, and that the amount of loss covered by the reinsurance was thirty-six thousand six hundred and seventy-two dollars. It further shows that the defendant purchased and had assigned to it the five policies set forth in the notice of set-off; that due and legal proof of loss was made, and notice thereof given plaintiffs, and that notice of the purchase and assignment was given by the defendant to the plaintiffs; that the amount of the adjusted loss upon the five policies of insurance was thirty-three thousand five hundred and fifty-three dollars and fifty-six cents; that they were purchased at twenty-five to forty per cent., and for the purpose of setting off the same against the demand of the plaintiffs. And that at the time of the purchase of said policies the Independent Insurance Company was insolvent, and the agents of defendant making such purchase, had reasonable cause to believe it was so insolvent.

It also appears, from the agreed statement and the evidence in the case, that proceedings under the insolvent laws of Massachusetts were instituted against said com-

pany in the courts of said state, on the 2d day of December, 1871, for the purpose of winding up the affairs of said company, and on the 9th day of January, A. D. 1872, an order was made appointing trustees for that purpose, but that, prior to the time of making said order, but on the same day, a petition in bankruptcy was filed against the company, upon which adjudication was made, and under which plaintiffs were chosen assignees. Upon this statement of facts plaintiffs would be entitled to recover the amount of their demand, unless the defendant is entitled to have set off against this amount, the amount of the adjusted losses upon the five policies purchased by it. Is then the defendant entitled to have them set off? This the plaintiffs deny, for two reasons. First. That the defendant had no corporate power to purchase and take an assignment of said policies for the purpose of set-off. Second. That the defendant, with knowledge that the Independent Insurance Company being insolvent, with insolvent proceedings pending against it, and the probabilities of proceedings in bankruptcy, could not purchase the same to be set off against the claim of the plaintiffs.

In support of the first proposition, it is said that corporations can exercise only such powers as are expressly granted, or which are clearly implied from those expressly granted, and that the power to make the purchase and take the assignment of these policies is neither expressly granted nor implied from powers expressly granted; and in support of this we are referred to the 10th section of the act of 1856, which provides that "It shall be lawful for such company to loan or invest any part of its capital stock, money, or other funds in such way as the directors shall deem best for the safety and interest of the stockholders, and to sell and dispose of any interest which the company may have acquired by any such loan or investment." 1 Swan & C. 362.

We are further referred to the 6th section of act of 15th of April, 1867, by which it is provided that "It shall be lawful for any insurance company organized under this act, or incorporated under any law of this state, to invest its capital and the funds accumulated in the course of its business, or any part thereof, in bonds and mortgages, on any unencumbered real estate within the state of Ohio, worth fifty per cent. more than the sum loaned thereon, exclusive of the buildings, unless such buildings are insured and the policy transferred to said company; and also in the stocks of this state, or stocks or treasury notes of the United States; and also in the stocks or bonds of any county or incorporated city in this state, authorized to issue by the legislature, and to lend the same or any part thereof, on the security of such stocks or bonds or treasury notes, or upon bonds and mortgages as aforesaid, and to change and

reinvest the same as occasion may, from time to time, require; but any surplus money over and above the capital stock of such insurance companies, or any insurance companies incorporated under any laws of this state, may be invested in or loaned upon the pledge of the public stock or bonds of the United States, or any one of the states, or the stocks, bonds, or other evidences of indebtedness of any solvent dividend-paying institutions incorporated under the laws of this state, or of the United States, except their own stock; provided, always, that the current market value of such stocks, bonds, or other evidences of indebtedness, shall be, at all times during the continuance of said loans, at least ten per cent. more than the sum loaned thereon."

It is also claimed that section 10 of the act of 1856 has been construed by the supreme court of the state, in the case of Straus v. Eagle Ins. Co., 5 Ohio St. 59. That by that construction no power existed in the defendant to make such purchase and to take such assignment, and that we must follow such construction. In the case of Pease v. Peck, 18 How. [59 U. S.] 598, Justice Curtis says: "There are, it is true, many dicta to be found in our decisions, averring that the courts of the United States are bound to follow the decisions of the state courts on construction of their own laws. But although this may be a correct, yet a rather strong expression of a general rule, it cannot be received as the enunciation of a maxim of universal application. Accordingly, our reports furnish many cases of exceptions to it." And again, in the case of Butz v. City of Muscatine, 8 Wall. [75 U. S.] 583, Justice Swayne says: "Where the settled decisions in relation to a statute, local in its character, have become rules of property, these remarks have no application. In such cases this court will, as it always has done, follow such adjudications. The cases of a different character, involving state statutes, in which the adjudications of the courts of the states in relation to them have been departed from by this court, extend in an unbroken series from an early period after its organization to the present time."

In the light of these authorities, the general application of the rule may well be doubted, and its special application to the present case is exceedingly doubtful; for it can hardly be claimed that this decision has become a rule of property. But admitting the rule as claimed by plaintiffs, how does the decision apply to the facts of this case? In the case before the supreme court of Ohio, the proof was a conditional purchase of notes by the insurance company, for the purpose of setting them off against an amount due upon a policy of insurance to the maker of the notes. No money was paid, and the entire syllabus of the case shows the decision to be confined to the case

made by the proof. It is true. the learned judge, delivering the opinion of the court, says: "That it (the corporation) had no power to become a party to the contract of indorsement by which it obtained the notes in question, and no capacity to take or hold the legal title." But even this language must, we think, be considered as applying to the case before the court, and so the supreme court of the state in the subsequent case of White's Bank of Buffalo v. Toledo Fire & Marine Ins. Co., 12 Ohio St. 610, clearly indicate; for, in speaking of the opinion of the court in that case, Judge Peck says: "But, while we concede there was such an abuse of power as would prevent the relief asked, we are not prepared to hold that where the indorsement is one which, under certain circumstances, the company might lawfully accept, in other words, where there was a mere abuse and not a total want of power, that such indorsement will be null and void for all purposes and for all persons." But the extent to which a decision is of binding authority is very clearly stated in the case of Cohen v. State of Virginia, 6 Wheat. [19 U. S.] 399, and afterwards affirmed by the supreme court in the case of Carroll v. Lessee of Carroll, 16 How. [57 U. S.] 287. Chief Justice Marshall, in delivering the opinion of the court in the former case, says: "It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may. be respected, but ought not to control the judgment in a subsequent suit when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent; other principles, which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

The facts of the present case show that the Independent Insurance Company had issued certain policies of insurance; that the defendant had reinsured it against loss on the same; that loss upon the original policies had occurred by which defendant had become liable to pay upon their policies of reinsurance, transactions which, to some extent, were connected together. The original insurance was the foundation upon which the reinsurance rested, out of which it originated, and there could have been no right of recovery upon the reinsurance until a liability to pay the original insurance had arisen. The loss had taken place; the liability to pay the original insurance had been fixed, by which the defendant had become liable to pay the reinsurance. The company issuing the original policies of insurance was insolvent, and the holders of them were selling them for twenty-five per cent. Was it

not, under such circumstances, "for the safety and interest of the stockholders" of the Home Insurance Company,. that the directors of the company should invest so much of the funds of the same as would be necessary for the purchase of the original policies at their selling price, rather than to permit them to pass into the hands of others, by which they would have been compelled to pay their full amount? I think it was, and that such an investment, purchase, and transfer was within their corporate power and consistent with public policy.

But, admitting the power to make the purchases and receive the assignments, can the policies be set off against the plaintiff's demand?

The 20th section of the bankrupt law [14 Stat. 526] provides "that in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid; but no set-off shall be allowed of a claim in its nature not provable against the estate; provided, that no set-off shall be allowed in favor of any debtor to the bankrupt of any claim purchased by or transferred to him after the filing of the petition." It is not denied that the policies were purchased and transferred before the filing of the petition, and that they were provable claims against the estate of the bankrupt, thus coming. as we think. clearly within the letter of the provisions of this section. It is said, however, that this section was not intended to enlarge the right of set-off, as it existed prior to its passage. That, as the law was then established, these claims having been purchased with a knowledge of the insolvency, of the pendency of the proceedings in Massachusetts. and the expected proceedings in bankruptcy, and for the purposes of set-off, they could not have been set off. It may be admitted that the decisions of the courts of the several states have not been uniform upon this question. Those of Louisiana. and a portion of those of New York and Massachusetts, holding, that under such circumstances set-off could not have been allowed, whilst a portion of both New York and Massachusetts recognize a different doctrine. And the doctrine of set-off, as recognized by the supreme court of Missouri, in the case of Morrow v. Bright, 20 Mo. 298, and of the court of appeals of Kentucky, in Finnell v. Nesbit [16 B. Mon. 280], would, we think. admit the set-off.

In Massachusetts, up to the time of the decision of the case of Smith v. Hill, 8 Gray. 572. it did not seem to have been seriously doubted by their courts that all claims existing against an insolvent's estate at the time of the commencement of the proceedings in insolvency, could be set off. But this decision holds a different doctrine, and yet the case may have been well decided, without such ruling. For in that case

Kibbs, the insolvent, at the time Hill purchased the goods and gave his notes, was in failing circumstances and unable to pay his debts. And that Hill bought the goods upon condition that the note should be placed in the hands of a third party for the equal benefit of all his creditors, so as to avoid any question as to the legality of the case. They were given and placed in the hands of an attorney, who accepted the trust, and many of the creditors of Kibbs sent their claims to the attorney and received their proportion of the proceeds of said notes. It was a part of the contract of sale that this trust should be created in favor of the other creditors, and certainly no court would have permitted the defendant under such circumstances to defeat a trust which he himself had created, so that the general question was not necessarily involved in the case. Whatever may be the effect of these several decisions, the bankrupt law intended to establish a uniform rule in regard to set-off, which would be the same in every state. It is said, however, that the great object of the bankrupt law was to secure an equal distribution of the property of the bankrupt among all the creditors, and permitting a set-off in a case of this character would defeat that object. But would it any more defeat it than if a creditor, who knows of the utter insolvency of a debtor, is permitted to bring his suit against him, to prosecute it to final judgment, issue his execution, and seize every dollar's worth of his property, have it sold and put the proceeds in his own pocket, to the exclusion of every other creditor? And yet the supreme court of the United States, in the case of Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473], has decided, under the bankrupt law, this can be done. And again, prior to the passage of the bankrupt law, an insolvent debtor could transfer all his property to a single creditor who had full knowledge of the debtor's insolvency, with intent on the part of the debtor of giving, and on the part of the creditor of receiving, a preference over all other creditors, and this the bankrupt law interferes with only when the transaction has taken place within a limited period of time before the filing of the petition, and it specifies particularly what transactions shall be a fraud upon the bankrupt law. In all of which the act of the bankrupt, his motive and intent, are essential elements; but in the purchase and transfer of the claim to be set off, he has nothing whatever to do. He neither makes, procures, or suffers the purchase and transfer.

Now, if one creditor can fairly go into the courts and by their process take from the remaining creditors every dollar of the bankrupt's estate, knowing the insolvency, intending to produce the preference, and the bankrupt in the mean time, with full knowledge of his condition and the result of the act of his creditor, why may not the debtor of the bankrupt honestly and fairly go into the market and purchase from the creditors of the bankrupt their claims and have them set off? Could congress have intended any other limitations than those expressly provided, a mutual debt or credit, which was provable against the estate of the bankrupt, and which had been purchased and transferred before the filing of the petition? To say that congress intended the additional condition, that it had been purchased without the knowledge of insolvency, would be to place the purchaser of a bill, bond, or note of the bankrupt in a worse position than the man who, with the aid and assistance of the bankrupt, had secured a preference by a conveyance of all the bankrupt's property, for in the latter case the law limits the time within which it may be declared fraudulent and void to four months; but in the former there is no limitation; it may have been purchased within four months or four years, but it is not protected. And again, it would open a wide field of litigation to establish the questions of insolvency and knowledge. But how stands the question of construction upon authority? Four decisions construing this section, have been cited. That of Hitchcock v. Rolla [Case No. 6,536], decided by Judges Drummond and Blodgett, and that of In re City Bank of Savings [Id. 2,742], by Judge Hoffman. The case of Hopkins v. Jackson [Id. 6,687], decided by this court, and the case of Sawyer v. Hoag [17 Wall. (84 U. S.) 610], decided by the supreme court of the United States. The Cases of the Savings Bank and Hopkins were in favor of the set-off, and that of Hitchcock v. Rolla and Sawyer v. Hoag were cited as against the set-off. As to the reasoning and authority of the first two cases I shall say nothing. As to the third case, it was a bill in equity, and the court says, the fair inference is that the claim was merely transferred to enable the holder to realize in full his claim, and that it was incumbent on him to show that he was more than the nominal owner. And the reasoning of the learned judge, based upon the theory that the bankrupt law rests upon the principle of an equal distribution of the property of the bankrupt, would apply with equal force against the decision of the supreme court of the United States, in the case of Wilson v. Bank of St. Paul [supra]. And further, the recent decision of the supreme court of the United States, in the case of Sawyer v. Hoag [supra], deciding that the capital stock of such company was a trust for the benefit of the general creditors, prevents the evil resulting from a ruling different from that made by the court in the case. As to the case of Sawyer v. Hoag, I do not regard the decision in the light in which it is viewed by the learned counsel for the plaintiffs. If the supreme court had given to the 20th section the construction contended for, there would have been no necessity of determining the character of the indebtedness of

Sawyer, for it was an admitted fact that he knew of the insolvency of the company, when he purchased the certificate. That he purchased it for thirty-three and one-third per cent., and for the purpose of set-off. So that no matter what the character of this debt, under the construction claimed no set-off could have been allowed. But the supreme court says the first and most important question to be decided is, whether the indebtedness of the appellant to the insurance company is to be treated, for the purposes of this suit, as really based on a loan of money by the company to him, or as representing his unpaid stock or subscription?

Having determined this most important question, that the debt was a part of the stock of the company, and, therefore, a trust fund for the benefit of the general creditors of the corporation, they decide as against such a fund the set-off could not be allowed, and their construction of the 20th section must be taken as applying to a case of the character they found the one before them to be. So that rather than being an authority in favor of the construction claimed by plaintiff, it would seem to be one strongly, inferentially at least, against it. The English and American bankrupt laws differ in this, that the English bankrupt law has relation to the commission of an act of bankruptcy, and the American to the filing of the petition. So far as I have been able to learn the decisions of the English courts, they have been uniform in holding that knowledge of insolvency did not prevent a set-off. Among the numerous authorities upon that point, I shall only refer to two. In Hawkins v. Whitten, 10 Barn. & C. 223, Bayley, J., says: "Notice of an insolvency, therefore, or notice of stoppage, are no longer ingredients upon ᴜis point. Notice of an act of bankruptcy is alone the criterion or dividing point, and before this period, Whitten takes the notes he claims to set off, and thereby becomes a creditor of the bankrupts and they became his debtors. It may be true, and is, that he took these notes for the very purpose of making them the subject of the set-off and of getting in substance twenty shillings in the pound upon these notes; but as this has not been prohibited, we cannot say that it is illegal." In the case of Dickson v. Cass, 1 Barn. & Adol. 354, Bayley, J., says: "The next question arises on the claim made by defendant to set off the sum of five hundred and ten pounds, being the amount of notes issued by the banking-house and taken in payment by R. Cass and Smart, after they knew the bankers were in a state of insolvency or had suspended their payment, but before they knew that any member of the firm had committed an act of bankruptcy. Hawkins v. Whitten, 10 Barn. & C. 217, is a decisive authority to show that they are entitled to deduct that sum from the debt claimed by the plaintiffs.

There the defendant claimed to set off notes of the Wellingborough Bank, which he had industriously obtained after the bank had stopped payment, and it was held that he had a right to set off the notes, they having been taken before he knew they had committed an act of bankruptcy." In addition to the American cases cited, I think the case of Smith v. Brinkerhoof, 8 Barb. 519, recognizes the right of set-off in bankruptcy, as limited only by the filing of the petition. The general doctrine of set-off is very clearly set forth by Chancellor Walworth in Holbrook v. Receivers of Fire Ins. Co., 6 Paige, 220.

In view of all the facts in this case, that the officers of the Independent Insurance Company were purchasing these claims, although for other parties; that it was reported to defendants they were purchasing for the company; the fact that they were being purchased in large numbers for twenty-five per cent., I think the defendants had a right to make the purchases, and that by a proper construction of the provisions of the bankrupt law they have the right to set them off against the plaintiffs' demand. The defendants having failed to establish their tender, judgment will be rendered for the plaintiffs for the balance of their demand, with interest.